JOHN C. OSWALD *vs.* HARRIET O'BRIEN *et al.*

Argued Jan. 25, 1892. Decided Feb. 5, 1892.

**Policeman of Minneapolis—Powers of.**—A policeman appointed by the board of police commissioners of Minneapolis, "with police powers to preserve the peace and protect property within the limits known as 'justice court,' *serving writs,*" had all the powers of a constable within the city of Minneapolis, and therefore was such an officer as was authorized, under Laws 1885, ch. 171, to conduct a chattel mortgage sale, at which the mortgagee might be the purchaser.

Appeal by Harriet O'Brien and James K. O'Brien, her husband, two of the defendants, from an order of the district court of Hennepin county, *Hicks,* J., made September 26, 1891, denying a new trial and refusing to modify its findings of fact.

The defendants Harriet O'Brien and James K. O'Brien, her husband, on November 26, 1888, owed the plaintiff, John C. Oswald, $7,500, due in two years, with interest at 10 per cent., payable semi-annually, and to secure its payment they gave him a mortgage on their leasehold interest in and to the lot No. 253 Hennepin avenue, Minneapolis, and the building thereon. They also gave him at the same time a chattel mortgage upon the saloon, furniture, and fix-

tures, and other personal property in the building on the mortgaged premises. The chattel mortgage empowered the creditor or his assigns to sell this furniture, fixtures, and personal property if default should be made in the payment of the debt or interest, or if any attempt should be made to remove or dispose of it, or if the mortgagors should not take proper care of it, or if the mortgagee should at any time deem himself insecure. The chattel mortgage provided that such sale should be made at public auction upon the notice and as provided by law, and that on such a sale the creditor might bid and become the purchaser. On July 11, 1889, O'Brien transferred this personal property to Robert E. Bader to hinder and defraud creditors; and on July 15, 1889, one of his creditors attached this personal property, claiming the transfer of it to Bader to be fraudulent as to creditors. Three days thereafter Bader replevied the property. O'Brien was then insolvent, and on July, 19, 1889, made an assignment for the benefit of his creditors.

Oswald deemed himself insecure, and on August 12, 1889, took this personal property under his chattel mortgage, and gave notice and sold it under the power. The sale was conducted by Perry M. Housel, an acting police officer of the city of Minneapolis. Oswald, the mortgagee, bid in and purchased the property at this sale for $150; the expenses were $91.23; the balance ($58.77) was applied upon the debt. The court below found that the personal property so sold was of the reasonable value of $1,750. Housel was appointed a special policeman, July 12, 1888, by the board of public commissioners of said city, under Sp. Laws 1887, ch. 9, § 6, at the request of Ace P. Abell, Esq., a justice of the peace of that city. His commission stated that he was to serve without expense to the city, and to have police powers to preserve the peace and protect property within the limits known as "justice court serving writs," but forbidden to exercise any authority or wear any badge of office outside those limits.

Oswald, the plaintiff, on December 19, 1890, begun this action in the district court to foreclose his mortgage upon the real estate. In it he admitted payment of $58.77 realized from the sale of the chattels. The defendants answered, claiming that they should have

credit on the notes and mortgage for the full value of the chattels, because Housel was not a sheriff or constable, and plaintiff could not become purchaser at the sale he made; that the sale was void; that plaintiff had converted the chattels to his own use, and must account for their full value, which they allege to be $5,000. The action was tried April 23, 1891, and this claim of defendants was disallowed, and judgment ordered for the amount claimed in the complaint. Defendants moved for a new trial, and also asked the court to modify its findings by deducting the value of the chattels as found by the court, $1,750, from the amount found due on the notes. Both parts of this motion were refused, and defendants brought this appeal.

*Jas. W. Lawrence,* for appellants.

Oswald, holding two mortgages to secure this debt, and having undertaken to foreclose one first, and having actually disposed of the property, must be held to the strictest accountability in this proceeding to foreclose the second mortgage, securing the same debt.

Either conspiracy, fraud, concealment, oppression, abuse of fair dealing, or irregularity in the foreclosure proceedings, coupled with an inadequate price, will vitiate the sale, and compel Oswald to account for the personal property at its fair value.

A special police officer is not a constable, and has no authority to conduct the foreclosure of a chattel mortgage, where the mortgagee is purchaser. *Graffam* v. *Burgess,* 117 U. S. 180; *Fitzgerald* v. *Kelso,* 71 Iowa, 731; *Tiernan* v. *Wilson,* 6 John. Ch. 414; *Lalor* v. *McCarthy,* 24 Minn. 417; *Stromberg* v. *Lindberg,* 25 Minn. 513; *Duford* v. *Lewis,* 43 Minn. 26; *Bixly* v. *Mead,* 18 Wend. 611; *Fletcher* v. *McGill,* 110 Ind. 395; *Drinan* v. *Nichols,* 115 Mass. 356; *Cook* v. *Jenkins,* 30 Iowa, 452; *Allen* v. *Clark,* 36 Wis. 101.

The sale was void, or, at least, voidable, on the ground that P. M. Housel was not a constable nor clothed with a constable's powers. There was no authority in law for the appointment of Housel. Sp. Laws 1887, ch. 9, § 6; Laws 1885, ch. 171.

To constitute a person an officer *de facto,* there must be an office *de jure,* and he must have actual possession and control of the office. *McCahon* v. *Com.,* 8 Kan. 437.

*Spooner & Taylor,* for respondent.

The mortgage was regularly foreclosed, and the sale was properly made by P. M. Housel, who was appointed a special policeman, and whose particular duties in the first instance were to serve process issued from Justice Abell's court, but who had been for some years prior thereto acting as a regular police officer or constable of Minneapolis. He was an acting constable. He was a police officer of the city of Minneapolis. He was acting as a police officer serving writs, attachments, executions,—all papers issuing from Justice Abell's court. He had made other chattel mortgage sales, and had made execution sales. He acted as a police officer of the city of Minneapolis during the full term of four years.

He certainly was acting as a police officer, and as a constable under an appointment that gave him, at least, the color of right so to do, and his official acts cannot be inquired into collaterally, but must stand for the purpose of this case, and receive as full sanction as if he had been a constable duly elected and qualified. *State* v. *Brown,* 12 Minn. 538, (Gil. 448;) *McCormick* v. *Fitch,* 14 Minn. 252, (Gil. 185;) *Commissioners of Ramsey Co.* v. *Brisbin,* 17 Minn. 451, (Gil. 429;) *Quinn* v. *Markoe,* 37 Minn. 439; *State* v. *McMartin,* 42 Minn. 30; *Carli* v. *Rhener,* 27 Minn. 292; *Trustees* v. *Halvorson,* 42 Minn. 503.

MITCHELL, J. To secure the payment of the same debt, the defendants executed to plaintiff two mortgages, one on real property, and the other on certain chattel property. Plaintiff, having previously foreclosed the chattel mortgage, and applied on the debt what he claimed to be the net proceeds of the sale, brought this action to foreclose the mortgage on the real property. While a great deal of extraneous matter was introduced on the trial, yet the substance and gist of the defense was that the foreclosure of the chattel mortgage by plaintiff was unauthorized, illegal, and fraudulent, and therefore that defendants were entitled to a credit on the debt, not merely for what the chattel property brought at the pretended foreclosure sale, but for the actual value of the property. One ground upon which it is claimed that the sale under the chattel mortgage was illegal is that there was nothing then due on the debt secured thereby.

But upon the facts found by the court, which were abundantly supported by the evidence, the plaintiff was fully justified, under the "insecurity clause" in the mortgage, in taking possession of and selling the property. The evidence also fully justified the finding of the trial court that the sale was made in pursuance of due notice, and was conducted in accordance with the provisions of law, honestly, openly, and fairly, *provided* Housel, the person who conducted the sale, was such an officer as was, under the statute, authorized to do so. This is really the only question in the case. The property was bid in at the sale by the plaintiff himself. Laws 1885, ch. 171, provides that, if the mortgagee or pledgee shall wish to bid at the sale of the mortgaged or pledged property, the sale shall be at public auction, and upon like notice as is required in case of execution sales, and shall be conducted by the sheriff, or his deputy, of the county, or by a constable of the town, in which such mortgaged or pledged property, or some part thereof, is situated at the time of giving such notice. 1878 G. S. ch. 10, § 149, provides that all police officers of cities shall possess the powers of constables at common law or by the laws of this state. In this case the property was situated and the sale took place (at public auction) in the city of Minneapolis, and was conducted by a policeman of the city, purporting to have been appointed by the board of police commissioners pursuant to Sp. Laws 1887, ch. 9, § 6, at the request of A. P. Abell, J. P., "as special policeman, to serve without expense to the city, and have police powers to preserve the peace and protect the property within the limits known as *'justice court, serving writs;'* but said special policeman shall not exercise any authority nor wear any badge of office outside the limits named in this appointment." Section eight (8) of the same chapter, after specifying certain required qualifications of members of the police force, provides: "All policemen so appointed shall possess all the common-law and statutory power of constables." It is somewhat difficult to classify this appointment as special policeman. The last clause of section six, (6,) under which it would seem that the appointment was assumed to be made, evidently contemplates the appointment of policemen or watchmen, with power merely to preserve the peace and protect property within certain prescribed limits. The limits

specified in this appointment are "the limits known as 'justice court.'" This cannot refer merely to the room in which the court was held; for an important part—indeed, the most important part—of the appointee's duties was "serving writs," by which must have been meant writs issued by the justice, which could be served anywhere within the limits of his jurisdiction. And this is exactly what the evidence shows that this policeman was accustomed to do, viz., serve all subpœnas, summons, warrants, attachments, and executions issued by this justice, and make sales on executions anywhere, at least, in the city of Minneapolis. Therefore while his appointment recites that it was made in accordance with the provisions of section six, (6,) yet he was not a special policeman, with only the limited powers within a limited area provided for in that section, but a policeman, at least *de facto*, with all the powers of a constable within the limits of the jurisdiction of Justice Abell, which was at least coextensive with the city of Minneapolis. He was therefore such an officer as was authorized, under Laws 1885, ch. 171, to conduct the mortgage sale.

The great inadequacy of the price bid at the sale, as compared with the actual value of the property, is also urged as establishing the fraudulent and illegal character of the sale. But while gross inadequacy of price, coupled with other circumstances, may be strong evidence of fraud, yet, especially where the sale was at public auction, it is not, of itself alone, sufficient ground for holding a sale void. As was said in one case, "inadequacy is the general consequence of such sales." Nor is the mortgagor in this case in very good position to urge this objection; for a sacrifice of the property was the natural consequence of his own course of conduct in attempting to dispose of the property for the purpose of defrauding creditors, which resulted in complicating the title in a tangle of litigation, of which he himself seems to have been the moving spirit.

Order affirmed.

(Opinion published 51 N. W. Rep. 220.)