FRANK A. RUSS v. MARGARET H. KANE.[1]

April 21, 1939.

No. 31,974.

[1]Reported in 285 N. W. 472.

*Margaret H. Kane,* pro se.

*Francis M. Smith,* for respondent.

*Bryce E. Lehmann, amicus curiae,* filed a brief in support of the contention of appellant.

HOLT, JUSTICE.

A demurrer to the complaint was overruled. No leave to answer was given or asked. An affidavit of no answer being filed, judgment in favor of plaintiff was rendered, from which defendant appeals.

The only assignments of error are: (1) The court erred in overruling the demurrer; and (2) the court erred in entering judgment for $8.53. From the brief of defendant as well as from that of *amicus curiae* the only point raised is that the complaint fails to allege that plaintiff had the status of a constable when the services were rendered, and therefore he cannot recover though performed at defendant's request.

The complaint states that on December 18, 1935, the commissioner of public safety of the city of St. Paul did issue and deliver to plaintiff a commission as a special police officer of the city at the request of Thomas J. Nash, then and ever since a justice of the peace of the tenth and eleventh wards of the city; that the next day the commission was duly recorded in the office of the register of deeds of Ramsey county; that said commission has not been revoked; that ever since the issuance of said commission plaintiff, as such special police officer of the city and as ex officio constable of the county, has served or executed all process issued out of the justice court of said Thomas J. Nash and has charged for his services therefor the fees prescribed by statute for constables; that de-

fendant is an attorney at law duly admitted to practice; that between September 30, 1937, and March 18, 1938, plaintiff, at defendant's special instance and request, rendered services for her in the execution of legal and valid process issued out of said justice court of Thomas J. Nash in actions therein pending; that defendant did promise to pay plaintiff the lawful fee for his services; that his lawful fees as such ex officio constable amount to six dollars, no part of which has been paid, though demanded.

Nothing can be gained by a historical review of the legislation relative to the courts of justices of the peace in the city of St. Paul and the constables or police officers authorized to serve or execute process issued by such courts. Merely to show that such review would be no aid, these samples of special acts for the city of St. Paul may be cited: Sp. L. 1874, c. I, is a complete charter of 103 pages. Thereby the city was divided into five wards, each ward to elect a justice of the peace and constable to serve two years, also the whole city to elect one justice of the peace to be "styled city justice" (c. II, § 2, of c. I). Sp. L. 1875, c. II, amended the act of the year previous by providing that the city justice be changed to municipal judge of the municipal court thereby established, his successor to be elected for a term of four years and must be an attorney admitted to practice. All other justices were abolished with the end of the term for which they had been elected and were to turn over the custody of their dockets, etc. to the municipal court.

"No justice of the peace hereafter elected or appointed in said city, shall issue any process or take cognizance of any action or proceeding, civil or criminal, but the jurisdiction of said municipal court shall within said city be exclusive in all causes hereafter cognizable before justices of the peace, save as above excepted as to existing justices during their present terms of office." § 26.

Nothing is found concerning ward constables, except by Sp. L. 1877, c. 23, § 6, the election of two constables for the city is provided. By Sp. L. 1876, c. 211, § 10, Sp. L. 1875, c. II, was amended as to § 26 thereof so that two justices of the peace were to be elected each two years, one to reside and hold his office east of Wabasha

street and the other west thereof, but were to have no criminal jurisdiction nor of forcible entry and unlawful detainer actions. These two justices need only be men of the ordinary type; but Sp. L. 1889, c. 403, privileged the citizens of the sixth ward to elect as justice of the peace a person resident therein who is "learned in the law and admitted to practise as an attorney in all the courts of this state," and also by Sp. L. 1889, c. 369, the like privilege was given to the citizens of the tenth and eleventh wards to elect a justice of the peace, provided he was "learned in the law," but he need not be an attorney admitted to practice. The same legislature by c. 423, gave the sixth ward the right to elect a constable; but this was not granted the electors of the tenth and eleventh wards.

The complaint is framed on the theory that plaintiff is by law authorized to serve or execute process or writs issued by or from the justice court of Thomas J. Nash, the duly elected and qualified justice of the peace of the tenth and eleventh wards of the city of St. Paul. The commission or appointment is fully set out. The pertinent parts of the city charter are pleaded, perhaps unnecessarily. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7520. The commissioner of public safety is by § 356 of the charter ex officio chief of police of the city and shall appoint officers and employes named "who shall constitute and be the bureau of police," among which are "such special policemen and watchmen, who shall serve without pay and who shall have all the authority conferred upon policemen in the regular service," etc. The next section (§ 357) provides: "The chief of police and all members of bureau of police shall possess the power of constables at common law and such powers conferred by statutes of this state," etc. 2 Mason Minn. St. 1927, § 9004, provides that every process issued by a justice of the peace shall be directed to the sheriff or constable of the proper county for service; and § 6996 thereof prescribes the fees which constables may charge for such service. Sp. L. 1889, c. 449, approved March 20, 1889, providing that all writs, process, and summons issuing out of any justice court shall be served by the sheriff of Ramsey county or his deputies or constables in and for the city or deputies appointed by

such constables as therein provided, was amended by the same legislature by c. 99, approved April 24, 1889, so as to read:

"Hereafter all writs, process and summons issuing out of any justice court in and for the city of St. Paul, county of Ramsey, shall be served by the sheriff of Ramsey county or a constable duly elected or *appointed,* or by the deputies of said sheriff, or by the deputies of said constables of the city of St. Paul appointed as herein provided." (Italics supplied.)

It seems plain that under the charter provisions and statutes referred to plaintiff, at the time he served the writs and process mentioned, at defendant's request, was a special police officer having the status of a constable at common law. As such he was authorized to perform the services he rendered at defendant's demand. It is alleged that the service of process and writs made by him was legal and valid. On demurrer this is to be taken as true. Defendant contends the complaint is fatally defective in not alleging that plaintiff took the oath of office or filed a bond. It is to be assumed that one lawfully appointed, who has for so many years effectively performed the duties of the office to which he was appointed, qualified in accordance with law. In Oswald v. O'Brien, 48 Minn. 333, 51 N. W. 220, a policeman appointed to serve writs of a justice court was held to have the powers of a constable. The reasoning there leads to the conclusion that here also the acts performed by plaintiff for defendant were valid and should be paid as if performed by an elected constable of the city. Defendant relies on State ex rel. Egan v. Schram, 82 Minn. 420, 85 N. W. 155, 156, a *mandamus* proceeding by a village marshal to enforce the payment of his salary, where the defense was raised and sustained on appeal that he had not qualified and hence was not entitled to pay from the village. It there appeared that relator had entered upon the performance of his duties but had not taken the oath of office, and the court said [82 Minn. 422]:

"It is well settled that the acts of a de facto officer are valid as to strangers or as to the public, or as to third persons who have

192

an interest in the acts done. In such cases the acts of the officer stand valid, in order that no one may suffer for a cause to which he was in no sense a party. But this principle does not apply when the officer himself claims the benefit of his acts. The law declares that before he shall enter upon the duties of his office he shall take the oath. He has the whole matter under his exclusive control, and, if he fails to conform to the statute, he himself is responsible."

Compare State ex rel. Webb v. Stratte, 83 Minn. 194, 86 N. W. 20. However, as already stated, there is nothing in the complaint from which it may be inferred that plaintiff had not taken the oath of office or posted the requisite bond. The complaint, in addition to showing plaintiff's appointment as special police officer to serve process issued by the justice court of Thomas J. Nash, justice of the peace, also states facts showing him to be a *de facto* officer for that purpose and as such entitled to the fees of a constable for the services as such rendered for defendant. Burt v. Winona & St. P. R. Co. 31 Minn. 472, 18 N. W. 285, 289; State v. Bryant, 174 Minn. 565, 219 N. W. 877.

The judgment is affirmed.

Mr. Justice Hilton, incapacitated by illness, took no part.

