ELLA BURT *vs.* WINONA & ST. PETER RAILROAD COMPANY.

January 28, 1884.

**Evidence—Telegraph Message.**—A telegraphic message is not admissible in evidence as a communication of a party offering it, without proof of its authenticity. Certain evidence considered properly rejected.

ON MOTION TO "DISAFFIRM."

**De Facto Court or Office.**—There may be a *de facto* court or office, the legality of which cannot be called in question, except in a direct proceeding by the state for that purpose.

**Same—Court in Operation under Act apparently Valid.**— When a court or office is established by a legislative act apparently valid, and the court has gone into operation, or the office is filled and exercised, under the act, it is a *de facto* court or office.

**Judicial Notice—Legislative Journals.**—The courts do not take judicial notice of the journals of the legislature.

**Bill signed and enrolled is prima facie a Valid Law.**—When an enrolled bill is signed by the presiding officer of each house, and approved by the governor, if the subject-matter of it is within the constitutional power of the legislature, it is *prima facie* a valid law; if it assumes to create a court, the court is *prima facie* legal.

The municipal court of the city of Mankato is à *de facto* court.

Defendant appeals from an order of the municipal court of Mankato, refusing a new trial.

After the argument and submission of this appeal, *State* v. *Gould*, *ante*, p. 189, was decided, and the appellant thereupon moved "to disaffirm," as stated in the second of the two following opinions.

*Thomas Wilson*, for appellant.

*Daniel Buck* and *A. R. Pfau*, for respondent.

DICKINSON, J. The defendant employed the plaintiff as a nurse to take care of a person who had suffered personal injury in an accident on its road. This action was brought to recover compensation for the service. The plaintiff continued to perform the duties of the employment after a time when the defendant claims to have discharged her. The only issue upon the trial was whether the defendant had discharged the plaintiff from service.

The error assigned upon this appeal is that the court refused to receive in evidence an instrument purporting to be a transcribed telegraphic message, signed by an agent of the defendant, and by which the discharge is claimed to have been effected. It was addressed and delivered to one Hamilton, who read it in the hearing of the plaintiff. When this instrument was offered in evidence, it had not been in any manner authenticated as a communication from the defendant, nor from its agent whose name was subscribed to it. There was nothing to show that the message, if sent by telegraph, was not the act of a stranger. It was therefore properly rejected by the court.

Proof was subsequently presented that the message had been sent by the defendant's agent, and had been communicated to the plaintiff at his request, but the instrument was not again offered in evidence. Again, upon its face the message did not appear to concern the plaintiff nor her employment. It reads as follows:

"*H. M. Hamilton, Mankato, Minn.:* This company will not be responsible for Miss Murphy's bills of any description after to-day.

"R. C. RICHARDS, General Claim Agent."

The plaintiff having been employed by the defendant to attend Miss Murphy, her service was not rendered to Miss Murphy, nor was the the charge for compensation one of "Miss Murphy's bills." Of course, it might have been shown, and perhaps was shown, after this evidence had been rejected, that the communication related to the plaintiff's employment, and was so understood.

It is unnecessary to consider whether the transcribed copy of the telegram was evidence of a primary character, or only secondary.

Order affirmed.

---

On the motion for disaffirmance the following opinions were filed:

GILFILLAN, C. J.   After the appeal in this case had been argued and submitted, but before it was decided, the defendant applied to the court asking it to "disaffirm" the judgment appealed from, on the alleged ground that the court rendering it is not a legal court, and its judgment therefore a nullity, because the act assuming to establish it, to wit, the act of November 22, 1881, entitled "An act to establish a municipal court in the city of Mankato, Blue Earth county, Minnesota," did not receive a vote of two-thirds of the entire senate in its passage through that body, and, consequently, did not pass according to the requirements of the constitution as construed by the court at this term in the case of *State* v. *Gould, ante,* p. 189.

To establish the fact, it refers to the journal of the senate, and claims that the courts take judicial notice of the journals of the legislature in respect to the passage of bills. The plaintiff answers that the court, if not a *de jure,* was at least a *de facto,* court, and its acts and judgments cannot be impeached collaterally for want of legality in the court itself, nor its legal existence be called in question, except in a direct proceeding on behalf of the state for that purpose, as was the case in *State* v. *Gould, supra.*

The argument of the defendant is that a judgment rendered without jurisdiction is void; that want of jurisdiction may always be shown; that if the legislative act under which a court assumes to act as such be void, there is a want of jurisdiction; and that, this act being void, there was no jurisdiction. Ordinarily, if the record shows that a court has assumed jurisdiction over a matter not committed to it by the constitution or some valid statute, it may be inquired into, and the excess of jurisdiction corrected or annulled on appeal from its judgment. The defect here alleged is in the non-existence in the law of the court itself. That presents a somewhat different case from an exception to the right of a court, admitted to exist, to try a particular matter. The latter is permitted, while public policy may prohibit the other.

The rule that the acts of *de facto* officers cannot be questioned collaterally includes the acts of judicial as fully as of other officers. In *State* v. *Brown*, 12 Minn. 448, (538,) the court held that the judge who held the court below, at the trial of the defendant, was at least a *de facto* officer, and that, until his right to the office should be determined in a direct proceeding for that purpose, it could not be questioned in a collateral proceeding. Many of the definitions of a *de facto* officer in the text-books and decided cases assume that there can be no *de facto* officer, except in a *de jure* office; and Dillon on Mun. Corp. § 276, (214,) goes so far as to say, "in order that there may be a *de facto* officer, there must be a *de jure* office; and the notion that there can be a *de facto* office has been characterized as a political solecism, without foundation in reason and without support in law; and therefore a person cannot claim to be a *de facto* officer of a municipal corporation, when the corporation or people have in law no power, in any event, to elect or appoint such an officer."

Whether there can be a *de facto* office—a *de facto* court—is the important question in the case, and it is one of no small difficulty; while there have been a great many cases in which it was attempted to call in question, in a collateral proceeding, the legal right of an officer to hold an office, there have been few where the legal existence of the office itself was contested. The reason given for the *de facto* doctrine applies as well to offices and courts as to officers. Said the court in

*State* v. *Carroll*, 38 Conn. 449, 467: "The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interests of the public and individuals where those interests were involved in the official acts of persons exercising the duties of an office without being lawful officers." It would be a matter of almost intolerable inconvenience, and be productive of many instances of individual hardship and injustice, if third persons, whose interests or necessities require them to rely upon the acts of the occupants of public offices, should be required to ascertain at their peril the legal right to the offices which such occupants are permitted by the state to occupy. Taking even the narrowest definition of an officer *de facto*, viz., that he is one who is exercising the duties of an office under color of legal right to the office, the reasons that justify the doctrine apply with equal force to a court or office where the same may be said to exist under color of right; that is, under color of law. That there may be a *de facto* municipal corporation, and consequently *de facto* offices of the same, follows from the rule laid down in Cooley, Const. Lim. *254: If a municipal corporation appears "to be acting under color of law and recognized by the state as such, such a question (that is of the legal existence of the corporation) should be raised by the state itself by *quo warranto*, or other direct proceeding"—and it is sustained by many authorities, holding that the question cannot be raised collaterally. *State* v. *Carr*, 5 N. H. 367; *People* v. *Maynard*, 15 Mich. 463; *Stuart* v. *School-dist.*, 30 Mich. 69; *Bird* v. *Perkins*, 33 Mich. 28; *President, etc.,* v. *Thompson*, 20 Ill. 197; *Kettering* v. *City of Jacksonville*, 50 Ill. 39; *Town of Geneva* v. *Cole*, 61 Ill. 397; *Kayser* v. *Trustees of Bremen*, 16 Mo. 88; *State* v. *Weatherby*, 45 Mo. 17; *City of St. Louis* v. *Shields*, 62 Mo. 247; 1 Dillon on Mun. Corp. § 43, (22.)

In *Secombe* v. *Kittelson*, 29 Minn. 555, the court held, in effect, that there might be a *de facto* state government.

In the line of these authorities are the only two cases we have found in which an attempt was made to contest collaterally the legal existence of a court. *Fraser* v. *Freelon*, 53 Cal. 644, was *certiorari* to review the proceedings of the municipal court of appeals of San Francisco in a private action. An attempt was made to draw in

question the legality of that court. The supreme court, after referring to the rule in case of a *de facto* officer, said (647:) "It is manifest that the question whether the office itself, which was attempted to be created by statute, has a legal existence, is of vastly more importance and of greater interest to the public than the question of the right of the incumbent," and held that the question could not be raised except in an action or proceeding by the state. *State* v. *Rich*, 20 Mo. 393, was an appeal from a judgment of the Lawrence county circuit court, quashing an indictment found in and removed into it from the Stone county circuit court, on the ground that the latter county had not been constitutionally established, and consequently there could be, in point of law, no such court as the Stone county circuit court where an indictment could lawfully be found. The supreme court held (397) that "all such inquiries must be excluded whenever they come up collaterally, and the county, its courts and officers, must be treated as things existing in fact, the lawfulness of which cannot be questioned, unless in a direct proceeding for that purpose." In view of these authorities, and of the reason that underlies the rule applied to acts of persons in the actual exercise, under certain circumstances, of the duties of public officers, and of the great public mischiefs that might sometimes arise but for the application of the rule to courts, we arrive at the conclusion that there may be *de facto* courts or offices, the legality of whose existence cannot be questioned, except in a direct proceeding by the state for that purpose.

We need not in this case attempt a definition to cover all instances of a court or office *de facto*. It is enough to determine upon the particular facts of this case. But we may go so far as to lay down this proposition, that where a court or office has been established by an act of the legislature apparently valid, and the court has gone into operation, or the office is filled and exercised under such act, it is to be regarded as a *de facto* court or office—in other words, that the people shall not be made to suffer because misled by the apparent legality of such public institutions.

It remains only to apply the principle to the case in hand. In *County of Ramsey* v. *Heenan*, 2 Minn. 281, (330,) it being alleged that a certain law had not passed the two houses in the manner prescribed

by the constitution, the court decided that it was to be tried by the court and not by a jury, and that it might inspect the original bills on file with the secretary of state, and have recourse to the journals of the legislature, to ascertain whether or not the law had received all the constitutional sanctions to its validity. And in *State* v. *City of Hastings*, 24 Minn. 78, upon a similar question, it was decided that the effect of signing the enrolled bill by the presiding officers of the two houses, as required by the constitution, is to authenticate the bill, and that, being thus authenticated, it is to be presumed to have passed in accordance with the requirements of the constitution; that under the rule in *County of Ramsey* v. *Heenan, supra,* the presumption is not conclusive, but may be overthrown by a reference to the journals. There could be no such presumption, and no necessity of reference to the journals to overthrow it, if courts took judicial notice of the contents of the journals or of the course of bills in the two houses. The act in question, having been authenticated in the proper manner and approved by the governor, and the subject of it being within the constitutional power of the legislature, was, under the presumption stated in *State* v. *City of Hastings, supra, prima facie* a valid law, and the court it attempted to create, *prima facie* a legal court. It was therefore, within the principle we have stated, a court *de facto.*

Application denied.

MITCHELL, J., *dissenting.* I concur in the conclusion that, under the facts of this case, the legal existence of the municipal court of Mankato cannot be attacked collaterally in this action, but only by direct proceeding for that purpose; and this, as I understand it, is, strictly speaking, the only matter properly before us at this time. But I am unable to concur in the views expressed in the majority opinion, that even if the act creating the court was never constitutionally passed, still it would be a *de facto* court. The logical result of this would be that the person assuming to act as judge of that court would be an officer *de facto,* and the judgments of the court as valid as those of a legal court. To borrow an expression from the majority opinion, I think that a *de facto* court or office is a political solecism. The idea of an officer *de facto* presupposes the existence

of a legal office. It seems to me that there cannot be an officer *de facto* unless there is a legal office, so that there might be an officer *de jure*. There are many cases to the effect that a person holding an office under an unconstitutional law is an officer *de facto*, but I think that in every one it will be found that there was a legal office, and that the law only went to the mode or manner of filling it. As suggested in the opinion, the *de facto* doctrine is founded on reasons of public policy and necessity, but it must have some reasonable limit, unless we are ready to recognize practical revolution and a legislative right to ignore all constitutional barriers. As bearing on the views here suggested, see Dillon on Mun. Corp. § 276, (214;) Cooley, Const. Lim. 750, 751, and note; *Carlton* v. *People*, 10 Mich. 250; *In re Boyle*, 9 Wis. 264; *Ex parte Strang*, 21 Ohio St. 610; *Town of Decorah* v. *Bullis*, 25 Iowa, 12; *Hildreth's Heirs* v. *McIntire's Devisee*, 1 J. J. Marsh. 206.

BERRY, J. I concur with my brother Mitchell.