# THE MARCKEL COMPANY v. EWALD ZITZOW.[1]

September 29, 1944.

No. 33,766.

*M. J. Daly,* for appellant.

*L. W. Martin,* for respondent.

*Dell & Rosengren,* for village of Perham, filed a brief *amicus curiae* in support of the contention of appellant.

YOUNGDAHL, JUSTICE.

The municipal court of Perham was established by Ex. Sess. L. 1933-1934, c. 35. After the court had been in operation for about six years, the statute creating it was held unconstitutional on the ground that a two-thirds majority of the members of the senate had not voted for the bill as required by the constitution. State ex rel. Burnquist v. Welter, 209 Minn. 499, 296 N. W. 582. On July 2, 1935, plaintiff secured judgment against defendant in said court, and on February 17, 1936, a transcript of the judgment was docketed in the district court of Otter Tail county. A writ of execution issued by the clerk of that court on June 3, 1943, was returned unsatisfied by the sheriff. On June 9, 1943, an order in supple-

[1]Reported in 15 N. W. (2d) 777.

mentary proceedings was secured, and thereafter defendant appeared specially and moved to terminate the proceedings and to strike the judgment from the files on the ground that all proceedings therein were void in that they were had in a court created under an unconstitutional statute. The lower court sustained the special appearance and granted the motion of defendant. Plaintiff appeals from this order.

The single question raised on the appeal is whether the municipal court of Perham was a *de facto* court antecedent to the time the act under which it was created was declared unconstitutional, so that its orders and judgments are legal and valid. In some of the decided cases this issue has been raised collaterally, and the cases have turned on the point that no collateral attack could properly be made. The question is here squarely presented, however, as the law creating the court was declared invalid in direct proceedings brought for that purpose prior to the time the motion herein was made. State ex rel. Burnquist v. Welter, *supra.*

It is defendant's position that the judgment is invalid because of the fact that there can be no *de facto* court without a *de jure* court and a *de jure* office. Plaintiff, on the contrary, asserts that, even though the law was invalid and unconstitutional, there existed a *de facto* court antecedent to the time the law was stricken down and that proceedings conducted in said court during that time are valid. Some courts have taken a positive position in support of the doctrine that there may be a *de facto* court under these circumstances. Others, just as emphatically, have taken a stand to the contrary. These decisions are irreconcilably in conflict.

But we are not without precedent in our own jurisdiction. The theory that there may be a *de facto* court antecedent to the time the law creating the court is declared unconstitutional has become settled policy in this state since the issue first came before the court in Burt v. Winona & St. P. R. Co. 31 Minn. 472, 18 N. W. 285, 289. Even though in the Burt case the primary issue was whether a collateral attack could be made, nevertheless the court took a definite stand on the issue here considered, as appears from the state-

ment of Mr. Chief Justice Gilfillan, speaking for the court, as follows (31 Minn. 477, 18 N. W. 287):

"We need not in this case attempt a definition to cover all instances of a court or office *de facto*. It is enough to determine upon the particular facts of this case. But we may go so far as to lay down this proposition, that where a court or office has been established by an act of the legislature apparently valid, and the court has gone into operation, or the office is filled and exercised under such act, it is to be regarded as a *de facto* court or office— in other words, that the people shall not be made to suffer because misled by the apparent legality of such public institutions."

The rationale of the cases supporting this doctrine is that it is necessary to protect those who deal with officers apparently holding office under a valid law and in such manner as to warrant the public in assuming that they are officers in fact. In dealing with them as such, the law validates their acts as to the public and third persons, on the ground that as to them, although not officers *de jure*, they are officers in fact, whose acts necessity and reason require to be considered as valid. This was substantially the reasoning adopted by our court in the Burt case when it further said (31 Minn. 476, 18 N. W. 287):

"* * * It would be a matter of almost intolerable inconvenience, and be productive of many instances of individual hardship and injustice, if third persons, whose interests or necessities require them to rely upon the acts of the occupants of public offices, should be required to ascertain at their peril the legal right to the offices which such occupants are permitted by the state to occupy."

Those supporting the contrary doctrine insist that "The idea of an officer *de facto* presupposes the existence of a legal office" and "there cannot be an officer *de facto* unless there is a legal office, so that there might be an officer *de jure*." See, dissent of Mr. Justice Mitchell in Burt v. Winona & St. P. R. Co. *supra.* They argue further that "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no

office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County, 118 U. S. 425, 426, 6 S. Ct. 1121, 1125, 30 L. ed. 178. Eminent jurists have written in support of this doctrine. More particularly the Norton case, in which the opinion was written by Mr. Justice Field, has become one of the leading cases in support of that theory.

While we are not unmindful of the respect and consideration rightfully due the courts and authorities supporting this position, we are committed to the opposing doctrine, which, in our judgment, is best sustained by sound reason, is most consistent with an enlightened public policy, the maintenance of public order, and the practical administration of justice. Simply to suggest that there cannot be a *de facto* court without a *de jure* court and a *de jure* office to fill, seems to us too much of a verbal distinction and too summary a way to dispose of a question with such far-reaching implications. Important official acts were actually performed by the judge of the court created under a statute apparently regularly enacted by the branch of the government to which the power to make laws has been delegated by the constitution. The acts of the incumbent were as potent, as far as the public is concerned, as were the acts of any *de jure* officer performing a duty of a legally existing office. The public, in its organized capacity, as well as private citizens, has acquiesced in and submitted to its authority. Under those circumstances, it appears to us that to suggest that, because there cannot be a *de facto* court without a *de jure* court, all such acts are invalid is too hypercritical a refinement and one which should have no support in law or reason. In a situation such as is presented here, the courts, in the practical administration of justice, should not be bound by abstract dogmas or fine theoretical distinctions, but rather, in the spirit of realism, should be prompted by considerations of necessity, convenience, and public good.

A good discussion supporting the theory adopted by this court is found in Wendt v. Berry, 154 Ky. 586, 595, 157 S. W. 1115, 1119, 45 L.R.A.(N.S.) 1101, Ann. Cas. 1915C, 493, which cites and ap-

proves the Minnesota case of Burt v. Winona & St. P. R. Co. The court there said:

"Acts of the Legislature are presumed to be valid until declared void by the courts. The people generally and rightfully so regard them. The power and authority of public officers who exercise the duties of office under legislative enactments is recognized by all persons with whom they have dealings in their official capacity, and the public good imperatively demands that validity should be given to the acts of these officers when they are performing duties within the scope of their public authority. If individuals dealing with public officers might in every instance question their authority or deny their right to exercise the office until the courts of last resort had given the sanction of their approval to the validity of the legislation under which the office was established, the conduct of public affairs would be involved in interminable confusion and doubt. No person would feel secure either in his personal or his private rights. Confusion and uncertainty would attend every official act that was performed. Such a condition as this would be disastrous to the peace and welfare of society."

Twice since the Burt case the doctrine that there may be a *de facto* court under the circumstances existing here has been recognized and approved by this court. State ex rel. Bales v. Bailey, 106 Minn. 138, 118 N. W. 676, 19 L.R.A.(N.S.) 775, 130 A. S. R. 592, 16 Ann. Cas. 338, and State ex rel. Tamminen v. City of Eveleth, 189 Minn. 229, 249 N. W. 184, 99 A. L. R. 289. Though the question was not raised directly in those cases as it is in the instant case, the court made its position clear, as appears from the dissent of Mr. Justice Mitchell in the Burt case and the language of the subsequent cases. The Burt case has become one of the leading cases in the country in support of this doctrine. It has been cited with approval in several state court decisions, as well as by numerous text writers. Defendant frankly concedes it to be the law of this state, but now asks us to discard it for the opposing doctrine. Because it has had the uninterrupted judicial blessing of this court

for 60 years and because we still think that it is the more reasonable and practical rule, we do not now feel justified in scrapping the precedent it has set. The same arguments advanced now for its overturn were made 60 years ago, as appears from the dissent of Mr. Justice Mitchell. Defendant cites a number of cases from other jurisdictions in support of his position, but, because we are so definitely committed to the other rule, no useful purpose would be served by reviewing them. The one probably more often cited than any other is Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. ed. 178, *supra*. In addition to our case of Burt v. Winona & St. P. R. Co., one of the leading cases upholding the theory of that case is Lang v. City of Bayonne, 74 N. J. L. 455, 68 A. 90, 122 A. S. R. 391, 15 L.R.A.(N.S.) 93, 12 Ann. Cas. 961. See, also, 1 Black, Judgments (2 ed.) §§ 173-175, and cases cited; 21 C. J. S., Courts, § 144; 11 Am. Jur., Constitutional Law, § 149. A Connecticut case (State v. Carroll, 38 Conn. 449, 9 Am. R. 409) has been cited by both those who favor and those who oppose the doctrine. In a well-reasoned opinion, Mr. Chief Justice Gummere of the New Jersey court, in Lang v. City of Bayonne, *supra,* clearly points out how the Connecticut case supports the doctrine adopted by this court. We agree with the New Jersey court's interpretation of the Carroll case.

We see nothing repugnant to sound constitutional doctrine in giving a *de facto* existence to the court under the circumstances here related. The mandate of the constitution has been obeyed. The court has been declared dead because it was not created by the required two-thirds vote of the members of the senate, as prescribed by the constitution. On the other hand, by approving the *de facto* existence of the court antecedent to the time the law was declared unconstitutional, the public has been protected, and confusion, uncertainty, and disorder prevented. Notwithstanding that we recognize there is eminent authority to the contrary, we approve and reaffirm the rule laid down in Burt v. Winona & St. P.

R. Co. *supra,* as being more consistent with the practical administration of justice.

Reversed.