HUBERT A. GILMORE, ET AL v. LAWRENCE COUNTY, ARK.

5-4718                                          439 S.W. 2d 643

Opinion Delivered April 7, 1969

[Rehearing denied May 12, 1969.]

*Hodges, Hodges & Hodges* for appellants.

*D. Leonard Lingo* and *Harry L. Ponder* for appellee.

CONLEY BYRD, Justice. Appellants Hubert A. Gilmore, et al, taxpayers of Lawrence County, appeal from the tax adjustments of the Lawrence County Board of equalization on rural farm lands for the year of 1966.

For reversal of the circuit court decree, appellants rely upon the following points:

1. The action taken by the Lawrence County Board of Equalization was the assessment of property instead of the equalization of property, and the board was without statutory authority to assess and its actions were therefore void.

2. The Board of Equalization of Lawrence County was without statutory authority for the action taken by it from January, 1966, to July 31st, 1966.

3. The County Clerk of Lawrence County failed to serve as secretary for the Board of Equalization of Lawrence County and did not keep a complete and accurate journal of its proceedings.

4. The Lawrence County Board of Equalization was not constituted according to law.

5. The Board of Equalization failed to follow the statutory procedure in notifying rural real property owners in Lawrence County of the raise of valuation of their property.

The record shows that prior to Aug. 1, 1965, the assessment coordination department, pursuant to Ark. Stat. Ann. § 84-477 (Repl. 1960), notified the proper county officials of Lawrence County that the county's ratio of total assessed value to market value was below the permissible limits—*i.e.*, the percentage valuation of all the property was 18.05 percent of value while the rural property was assessed at 13.27 percent of value. Being fearful the schools in the county would lose their state turnback funds, the equalization board immediately looked into the matter. After excluding a flat percentage raise of rural values and the calling in of professional appraisers, the board elected to set up a uniform standard of valuations based on soil types, which,

when applied to each tract of farm land, would result in each tract being assessed at 20% of its value. Since the tract by tract valuation according to soil types could not physically be done during the regular 1965 session it was decided to have a planning session in the early part of 1966.

Pursuant to plan, the equalization board met in late January or early February 1966, and began the tract by tract review of all assessed rural farm lands according to soil type. They fixed monetary values on various types of soil and arrived at the valuations which should be placed on each call by the total number of acres of each soil type. The number of acres of each type were generally arrived at by use of Soil Conservation maps showing soil types and ASC aerial photographs, together with the board's knowledge of the different areas in the county. Because of the volume of work involved, the board hired Mrs. Mildred Randolph to do the clerical work and caused her to prepare before Aug. 1, 1966, the notices required by Ark. Stat. Ann. § 84-707, (Repl. 1960). However the notices were not mailed until August 1, 1966, and at intervals thereafter.

The county assessor, independently of the board of equalization, completed an assessment book of all Lawrence County property upon essentially the same valuation used in 1965. This book was delivered in accordance with law to the board at its regular session commencing Aug. 1, 1966.

Point 1. To show that the action of the board was in reality assessment instead of equalization, appellants rely upon *Lyman* v. *Howe,* 64 Ark. 436, 42 S.W. 830 (1897). There the assessor's roll showed that there was no assessment of the lot mentioned. We held that the action of the equalization board in placing a valuation on the property was void since it amounted to an assessment. In doing so, however, we pointed out that once the assessor has placed a valuation thereon then the

board of equalization may equalize this valuation with the average valuation of other land, by raising or reducing same as the case may require, so as to fix its true value.

The record here shows that the August 1, 1965, official ratio study of assessed values for Lawrence County, prepared by the Assessment Coordination Department, showed all property was assessed at 18.05% market value, with various types of property being assessed as follows:

| | |
|---|---|
| Residential | 20.00% |
| Rural | 13.27% |
| Commercial | 18.62% |
| Industrial | 20.38% |
| Personal Property | 20.92% |
| Utility Property | 20.00% |

Thus it is seen that the rural lands were not carrying their proportionate share of the assessments according to value and that the burden was cast on someone to bring them into line with other properties in the county as well as in the State at large. That this duty was cast upon the equalization board was recognized in *Lyman* v. *Howe, supra.* See also *Pulaski County Board of Equalization cases,* 49 Ark. 518, 6 S.W. 1 (1887), where we held that county boards of equalization could proceed without complaint first being made against the assessor's returns and could act on evidence or on their own knowledge for the purpose of equalizing assessments. Consequently we find appellants' first point to be without merit.

Point 2. In arguing that there was no statutory authority for the action taken by the board between

January 1966 and July 31, 1966, appellants point out that the decision to send notice of increases in valuation pursuant to Ark. Stat. Ann. § 84-707 was made before the assessor's report of the 1966 assessments was filed with the board. We agree with appellants that the record does show that the board had reached a decision during its planning stage, and as far back as the regular 1965 session, to raise the valuations of rural property in Lawrence County prior to August 1, 1966. However we must point out that it is not decision making by an equalization board before August 1st that is prohibited, but the raising or lowering of valuations. There is no showing in the record that any valuations were increased until the time the notices thereof were mailed out by the board. We find that the legislature recognized that planning sessions at which tentative decisions could be made are a necessity. See Ark. Stat. Ann. § 84-721 (Repl. 1960), which specifically provides that, "Said board shall be vested and charged with all the powers and duties with which such board is vested and charged when meeting in regular session, . . ."

Point 3. We find nothing in the record to sustain appellants' contention that the county clerk of Lawrence County failed to serve as secretary for the board and did not keep a complete and accurate journal of each proceedings during its regular session. We know that Ark. Stat. Ann. § 84-703 (Repl. 1960), requiring the county clerk to serve as secretary of the equalization board, was passed in 1929, before the authorization for planning sessions was passed in 1955 (Ark. Stat. Ann. § 84-721). Under this circumstance we do not interpret Ark. Stat. Ann. § 84-703 as requiring the attendance of the county clerk at all special planning sessions of the equalization board. Otherwise it might become impossible for the county clerk to perform the other duties assigned to his office by law.

Point 4. The record shows that Lawrence County was divided into two districts until August 30, 1963, at which time it was consolidated. After that date the

county equalization board should have been composed of only three members instead of five. Ark. Stat. Ann. § 84-702 (Repl. 1960). However it was stipulated that there had been no action by the county judge, school officials or city officials in Lawrence County to select a new board of equalization after consolidation of the county. Under these circumstances it would appear that the existing five members remained on the board as hold-over members until their successors were duly selected or appointed and qualified, Ark. Stat. Ann. § 84-702. At any rate they were at least *de facto* officers. See *Pennington* v. *Oliver*, 245 Ark. 251, 431 S.W. 2d 843 (1968).

Point 5. Appellants' last attack on the equalization board is that it failed to literally follow the notice procedure required by Ark. Stat. Ann. § 84-707(2) & (3). Here the record shows that the board in sending out its notices to the landowners only showed the valuation fixed by the board—*i.e.*, the notices did not state the valuation returned by the assessor for the year 1966. While we think the better practice would have been for the notices to have complied with the statutes, under the circumstances we find that appellants are not in a position to allege error because all of them appeared in ample time before the board. Therefore even if it should be held that the notice was defective, any error in connection therewith is harmless as to the appellants.

Affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice. I disagree with the result reached by the majority because I do not see how the action of the board of equalization in this case can be taken to be an equalization of assessments made by the county assessor for 1966.

Our system of assessment of property for taxation requires that the primary valuation be made by the as-

sessor. *Pulaski County Equalization Board Cases,* 49 Ark. 518, 6 S.W. 1; *Lyman v. Howe,* 64 Ark. 436, 42 S.W. 830. Then, and only then, is the board of equalization authorized to raise or lower valuations placed on specific properties in order to equalize the valuations. See *Pulaski County Equalization Board Cases,* supra; *Lyman v. Howe,* supra.

That is not what took place here. The board of equalization actually made its own valuation of rural real estate without regard to the valuations made by the assessor on this or any other property.

H. L. Lady, a member of the board of equalization, testified that the board met in January or February 1966, after having been advised on August 1, 1965, that a school district in the county would lose state aid if the property valuations for tax purposes in rural areas were not increased; that the board met for a week in August 1965, and established a basis to work on toward a fair assessment and agreed on values for a certain type of land; that it reconvened in January 1966 for the purpose of finishing the job of land reappraisal commenced at the earlier meeting; that the value to be placed on each farm was determined by consideration of its location, land type, soil conservation maps and aerial photographs from the Arkansas Soil Conservation office, the personal knowledge of the board members and a chart they had; that the true value was not established until August 1, 1966; that the board remained in session for about two months and adjourned about April 1, 1966; that the valuation on each tract was placed on a card and transferred to a book which was delivered to either the assessor or county clerk on October 1, 1966; that they did not ever look at the assessor's abstract of assessments required by law to be filed by July 31, 1966, because they were working on their own plan; that the board had completed its "assessment" by July 31, and had caused some of the notices to affected property owners to be prepared, even though the valuations noted on

cards had not all been transferred to the book later filed; the raise in assessed values by the board was based on the values placed on the lands in the meetings of February and March 1966; the notices to the landowners did not include the values at which their respective lands had been previously assessed; the book the board prepared and filed was made up between May 1 and August 1.

The employee who made the book testified that it was prepared in April or May 1966. The notices to landowners were prepared by this employee in July, and she began mailing them in the latter part of July. They were notices that the "assessment appraisals" had been raised. The book prepared by the board of equalization was brought to the tax assessor sometime in August, according to his testimony.

The powers of the county board of equalization are special and limited. It can perform no act unless it is specially authorized so to do in express terms. *Lyman* v. *Howe,* 64 Ark. 436, 42 S.W. 830; *Pulaski County Equalization Board Cases,* 49 Ark. 518, 6 S.W. 1 The board was authorized to meet from the first of August 1966 through the third Monday in November of that year to *equalize* the assessed value of all property subject to local assessment Ark. Stat. Ann. § 84-706 (Repl. 1960). The reason for the beginning date of August 1 is that this is the final date for delivery of the tax assessment record to the board by the county assessor. Ark. Stat Ann. § 84-463.1 (Repl. 1960). Immediately after the filing of this report, the clerk of the county court is required to lay the report before the board. Then, and only then, is the board authorized to *equalize* assessed valuations *made* by the assessor. Ark. Stat. Ann. § 84-707 (Repl. 1960). It is true that special planning sessions are authorized by Ark. Stat. Ann. § 84-721 (Repl. 1960). This act, by its own terms, strictly limits the purpose of these meetings to planning. It is not nearly so broad as the limited quotation in the majority opinion would make it appear.

I submit that this board did far more than plan its work of equalization. It met in February and March of 1966 for the purpose of finishing its job of reappraisal of lands. It then determined values to be placed on farms by considering various factors none of which included the value placed on the lands by the assessor in 1966. It could not possibly have considered this valuation because the assessor was not required to complete his assessment of lands until July 1. Ark. Stat. Ann. § 84-415 (Repl. 1960). He was not required to complete his assessment of personal property until August 1. Ark. Stat. Ann. § 84-416 (Repl. 1960). His report was also due to be filed on August 1. Consequently, any assessment that he might have made in February or March would not have been final until his report was filed. The board certainly considered that it had made an assessment by the latter part of July when it commenced mailing out notices to landowners. These notices were only called for when the board had raised the valuation of any property. Ark. Stat. Ann. § 84-707. They were based upon a book of board valuations completed by June 1. It was impossible for it to have "equalized" assessments because it never saw the assessor's report. The chairman, when asked if the board ever saw the 1966 report, answered, "Well, we were done with our assessment July 31st in '66."

The conclusion that the board of equalization did not equalize valuations, but that it made an assessment of its own, seems inescapable to me. In view of the testimony of the chairman and the board's clerical employee, called by appellants as hostile witnesses, I do not see how it can possibly be said that the work of the board was "equalization," or that, prior to August 1, it was only planning.