Taylor LANDTHRIP *v.* CITY OF BEEBE et al

79-284                                        593 S.W. 2d 458
Supreme Court of Arkansas
Opinion delivered February 11, 1980

*Hughes & Hughes,* for appellant.

*William P. Mills,* for appellees.

JOHN A. FOGLEMAN, Chief Justice. This is a strange case. The purported holder of a purported judicial office is contending that the office was not validly created and that his acts were invalid. Appellant, Taylor Landthrip, who has been acting as Judge of the Police Court of Beebe, brought this action against the City of Beebe for a declaratory judgment as to the legal status of the court of which he purported to be the presiding judge. The city, acting through its Mayor and City Council answered Landthrip's complaint, alleging that he was elected judge by the voters of the City of Beebe, a city of the first class, and praying that the complaint be dismissed.

The circuit court heard the case upon the pleadings, an exhibit, a stipulation between the parties, and briefs submitted by them. That court found that: the Police Court of the City of Beebe was purportedly established by action of the Beebe City Council on March 2, 1971, according to minutes of its meeting on that date, which reflected that the Mayor appointed a designated person as police court judge and fixed the compensation to be paid to him, and that this action was approved by the council; and no ordinance creating the court had ever been published as required by Ark. Stat. Ann. § 19-2404 (Repl. 1968). Based on these findings, the court held that: even though the city council of a

city of the second class may provide, by ordinance, for the creation of a police court under Ark. Stat. Ann. § 22-808 (Repl. 1962), and the mayor of a city of the second class may select the person who is to sit in the mayor's stead as judge of that court, the council's action in creating such a court was an act of general and permanent nature; and the action of the city council was legally insufficient to establish the court, because no ordinance to create the court had been adopted or published. The court held, however, that the purported creation of the police court and the subsequent operation of the court were sufficient basis to declare it a de facto court to the extent that all previous actions and judgments of the court were as valid as they would be had the court been properly and legally created.

In his complaint, Landthrip had alleged that the City of Beebe was elevated from a city of the second class to a city of the first class as a result of the 1970 federal census and, as such, was authorized by Ark. Stat. Ann. § 22-811 (Supp. 1979) to create a police court by ordinance of general and permanent nature, but the city had never published any ordinance, by-law or other act creating such a court, and that, since Beebe had been a city of the first class for eight years, it then had no authority to create a police court. The justiciable controversy alleged was based upon Landthrip's contention that the legal status of the Beebe Police Court was uncertain, but that the mayor and city council refused to provide for any change in the existing court system, because of their contention that the court was validly created.

Appellees admitted all factual allegations of appellant's complaint, but asserted that, under Ark. Stat. Ann. § 22-811, which authorizes a city, upon reaching first class status, to establish a police court, in lieu of a municipal court, until such time as the governing body of the city determines that the city has sufficient funds to pay its cost of a municipal court, the action of the city council would not be of a general and permanent nature and publication of that action not required. It was stipulated that on March 2, 1971, at a meeting of the City Council of Beebe, Mayor Jessie Lay purported to appoint Ray Ostergrant as Beebe Police Court Judge and that a motion was passed by the council accepting Ostergrant as

Beebe Police Court Judge. It is admitted that Landthrip was elected to the office of police court judge by the voters of Beebe in November, 1976, and that he has been holding himself out as such since January 1, 1977.

Appellant asserts that the circuit court erred in holding that the Police Court of the City of Beebe was a de facto court prior to June 6, 1979. He contends that, upon the authority of *Howell* v. *Howell,* 213 Ark. 298, 208 S.W. 2d 22, of Justice McFaddin's dissenting opinion in that case, and of *Pope* v. *Pope,* 213 Ark. 321, 210 S.W. 2d 319, there cannot be a de facto officer without a de jure or de facto court, and that the elements of a de facto court do not exist here. According to him, the missing elements are the organization of the court under an act of the state legislature believed to be valid and a determination, after creation of the court, that the act was invalid. He says that, because of the failure to publish the action of the council, the court was not organized in accordance with the procedures required by law at the time of its creation and that the act (98 of 1967) has never been determined to be invalid. Appellant then says that our statements in *Caldwell* v. *Barrett & Turner,* 71 Ark. 310, 74 S.W. 748, where we held that the attempted election of a special judge of a circuit court was invalid and not authorized by Art. 7, § 21 of the Constitution of Arkansas, were invalid because the purported judge was elected under circumstances not contemplated by that constitutional provision. We did hold in that case that, in order for there to be a de facto judge, there must be a regularly constituted office and a vacancy therein before one elected to fill such office can be denominated a de facto officer. In doing so, we said:

> ***[I]t is true that when there is an office, and no de jure officer to exercise its functions, then one appointed under the form of law would be a de facto officer at least, and his acts are not to be called in question collaterally. The question is quite different where there is no de jure office, if it is proper to so speak, for the foundation of the proceeding must be, as in this case, a lawfully created court, or there is a total want of jurisdiction in the court itself to hear and determine the cause, and this jurisdictional infirmity will annul any proceedings therein on

mere suggestion to the proper court. It would be beyond all precedent to term the judge presiding in a court which is not a court at all a de facto judge.

Before proceeding to answer the only question before us on appeal, we will consider an argument advanced by appellees. Even though they did not take a cross-appeal from that portion of the judgment holding that the Police Court of the City of Beebe was illegally constituted, they argue in their brief here that the trial court did not err in holding that the purported creation of the court and its actual operation constituted the court a de facto court because, under Act 1 of 1875, cities of the first class were all intended to have police courts without the necessity of council action. Be that as it may, the General Assembly has provided for a Municipal Court in every city of the first class having a population of 2,-400 or more by Act 60 of 1927, as amended, [Ark. Stat. Ann. § 22-701, et seq (Repl. 1962)] but by Act 98 of 1967 [Ark. Stat. Ann. § 22-811 (Supp. 1979)], a city elevated from a city of the second class to a city of the first class may, by act of its governing body, provide for the establishment of a police court, in lieu of a municipal court, until the city has sufficient funds to support a municipal court, "which would otherwise be established in said city." We do not agree with appellees' argument that no ordinance was necessary because the General Assembly created the court. The "act of its governing body" requires the enactment of an ordinance by the city council, board of managers or board of commissioners of the city involved. Even though the circuit court may have erroneously applied statutes relating to cities of the second class, appellees have not shown that the judgment of the circuit court holding that the police court was not validly created was erroneous, much less a nullity. We cannot answer the question before us on the basis of appellees' argument, although we agree that our statutes, beginning with Act 1 of 1875, contemplate the existence of a mayor's court, police court or municipal court in every municipal corporation.

Only one question is presented on this appeal. It is unlike any we have treated before. It is possible, under some circumstances, to have a de facto court, to the extent that its acts

are valid, when the court is authorized by law but is defectively organized. The situation presented here is vastly different from that presented to us in *Caldwell,* where there was no authority in law for the holding of a circuit court when a special judge was elected to preside over an adjourned session of that court in one county while the regular judge was presiding over the circuit court of another county in the same judicial district. Here there was ample authority in law for the creation of a police court in Beebe and the statutes plainly contemplate that there be some type of corporation court in every municipal corporation.

There are exceptions to the rule that there can be no de facto officer unless there is a de jure office, where the office may be said to exist under color of law. *State v. Bailey,* 106 Minn. 138, 118 N.W. 676, 130 Am. St. Rep. 592, 19 LRA N.S. 775, 16 Ann. Cas. 338 (1908). It has been aptly said that great public mischief might well arise if the rule pertaining to de facto officers were not applied to recognize that there may also be de facto courts. *Burt* v. *Winona & St. P. R. Co.,* 31 Minn. 472, 18 N.W. 285 (1884). When a court is organized under color of law, e.g., when its creation is authorized by law, but the proceedings creating it are irregular or defective, it is a de facto court, and its judgments and proceedings are not open to collateral attack. *State v. Bailey,* supra. See also, *People* v. *Hanley,* 106 Misc. 625, 37 N.Y.Cr. 430, 176 N.Y.S. 392 (1919); *Marckel Co.* v. *Zitzow,* 218 Minn. 305, 15 N.W. 2d 777 (1944).

The rule governing validation of acts of a de facto officer is based upon public policy and its origin and history show that it is founded in comparative necessity. *Adams* v. *Lindell,* 5 Mo. App. 197 (1878). The doctrine rests upon the principle of protection of the public and third parties. It was engrafted upon the law as a matter of policy and necessity to protect the interest of the public and individuals involved in the acts of persons performing the duties of an officer without actually being one in law. 63 Am. Jur. 2d 939, Public Officers & Employees, § 493; *Matthews* v. *Bailey,* 198 Ark. 830, 131 S.W. 2d 425. See also, *Howell* v. *Howell,* 213 Ark. 298, 208 S.W. 2d 22 (McHaney, J., dissenting). The reasons for introduction of the doctrine into the law are sufficient basis for extending it to

courts whose creation is authorized by law, but defectively done.

The situation with which we are now faced is somewhat like that treated by the Supreme Court of New Mexico when the constitutionality of the act creating a juvenile court in that state was attacked. See *In re Santillanes,* 47 N.M. 140, 138 P. 2d 503 (1943). That court, facing the possibility of invalidating hundreds of judgments in the juvenile courts by a declaration that there was no juvenile court, and never had been, if the condition that there must be a de jure office before there can be a de facto officer were rigidly adhered to in every case, pointed out that it had previously held that, where uncertainty, chaos and confusion would result if the condition were rigidly adhered to, public policy forbids upholding that condition. We face a similar situation here. No doubt there have been hundreds of judgments rendered by the Police Court of the City of Beebe during the eight years intervening between the appointment of a judge and the judgment now being considered on appeal. Apparently the validity of the organization of that court has not heretofore been questioned. There was statutory authority for the creation of the court. We feel that public policy requires that we sustain the trial court's holding that there was a de facto court until the date of the circuit court's judgment.

The judgment is affirmed.

HICKMAN and MAYS, JJ., not participating.