The Honorable Barbara King State Representative 106 Tulip Circle Helena, AR 72342-1620
Dear Representative King:
You have requested an Attorney General opinion concerning a situation in which four members out of eight positions on the West Helena City Council met with the mayor and voted to fill a vacancy in one of the council positions. They also made certain decisions concerning the membership of the Helena-West Helena-Phillips County Port Authority. Your request is a follow-up to Opinion No. 99-404, in which I opined that four members out of eight positions did not constitute a quorum for purposes of transacting official business, and that the mayor could not be counted toward the required quorum.
Concerning the same scenario, you have now presented the following questions:
 (1) What are the results or effect of actions taken by the West Helena City Council at any meetings where an alleged council member is not properly holding the position? That is, are any actions void, voidable, or effective?
 (2) Who has the legal responsibility or right to see that the improper council member and improper port authority members are removed from office?
 (3) What is the proper procedure to remove a person who is wrongfully holding a position on the city council or the port authority?
 (4) Does the city attorney of a city of the first class have any obligation or responsibility to defend each wrongful office holder?
RESPONSE
Question 1 — What are the results or effect of actions taken by the WestHelena City Council at any meetings where an alleged council member isnot properly holding the position? That is, are any actions void,voidable, or effective?
It is my opinion, as explained more fully below, that under the circumstances you have described, the council member who was appointed by less than a quorum to fill the vacant position on the city council was ade facto city council member. Because he had de facto status, his actions are valid and effective and cannot be attacked collaterally.
De Facto Status
Because the validity of the council member's acts depends upon his defacto status, I must begin with a discussion of the basis for my conclusion that he has de facto status. The Arkansas Supreme Court has on many occasions discussed the principle of de facto status. The court's most illuminating explanation of what is required to establish de facto
status was set forth in Faucette Mayor v. Gerlach, 132 Ark. 58,200 S.W 279 (1918), and this explanation has been cited many times since. It states:
 "An officer de facto is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. His color of right may come from an election or appointment made by some officer or body having colorable but no actual right to make it; or made in such disregard of legal requirements as to be ineffectual in law; or made to fill the place of an officer illegally removed; or made in favor of a party not having the legal qualifications or it may come from public acquiescence in the officer holding without performing the precedent conditions, or holding over under claim of right after his legal right has been terminated; or possibly from public acquiescence alone when accompanied by such circumstances of official reputations as are calculated to induce people, without inquiry, to submit to or invoke official action on the supposition that the person claiming the office is what he assumes to be."
Faucette, 132 Ark. at 60, quoting Cooley on Constitutional Limitations (7th ed. at 897-98) (emphasis added).
The above-quoted explanation of de facto status indicates that if an officer is appointed by a body that has only a "colorable" right to appoint the officer, this officer will have de facto status.
It is therefore incumbent to examine the concept of "colorable" authority (or acts taken "under color of law"). A good starting point is the dictionary definition of the term "colorable". That definition states: "That which is in appearance only, and not in reality, what it purports to be, hence counterfeit, feigned, having the appearance of truth."Black's Law Dictionary, 5th Ed.
The Arkansas Supreme Court's explanation of the concept of "colorable" authority is consistent with the dictionary definition quoted above. The court set forth this explanation in the context of explaining why the acts of a court with de facto status cannot be challenged. In Landthripv. City of Beebe, 268 Ark. 45, 593 S.W.2d 458 (1980), the court stated:
 When a court is organized under color of law, e.g., when its creation is authorized by law, but the proceedings creating it are irregular or defective, it is a de facto court, and its judgments and proceedings are not open to collateral attack. State v. Bailey, supra. See also, People v. Hanley, 106 Misc. 625, 37 N.Y. Cr. 430, 176 N.Y.S. 392 (1919); Marckel Co. v. Zitzow, 218 Minn. 305, 15 N.W.2d 777 (1944).
Landthrip, 268 Ark. at 50 (emphasis added).
The Arkansas Supreme Court's and Arkansas Court of Appeals' decisions concerning de facto officers reflect an approach that is consistent with the foregoing. The courts have, for example, held officers to have defacto status in situations where they have not been appointed or confirmed as required by statute, see, e.g., Chronister v. State,55 Ark. App. 93, 931 S.W.2d 444 (1996) (city attorney as prosecutor);Appleby v. Belden Corp., 22 Ark. App. 243, 738 S.W.2d 807 (1987) (Workers' Compensation commissioners); State v. Roberts, 255 Ark. 183,499 S.W.2d 600 (1973) (deputy prosecuting attorney); Ford v. Martin,223 Ark. 744, 268 S.W.2d 391 (1954) (municipal plumbing board); where they have held over in office rather than being appointed by the proper authority as required by statute, see, e.g., Gilmore v. Lawrence County,Ark., 246 Ark. 614, 439 S.W.2d 643 (1969) (county equalization board members); and where they were not qualified as required by law to hold the position in question, see, e.g., Bell v. State, 334 Ark. 285,973 S.W.2d 806 (1998) (assistant attorney general serving as prosecutor without meeting residency requirements); Sitton v. Burnett,216 Ark. 574, 226 S.W.2d 544 (1950) (city marshal who was not a city resident); Brown v. Anderson, 210 Ark. 970, 198 S.W.2d 188 (1946);Center Hill School District No. 32 v. Hunt, 194 Ark. 1145, 110 S.W.2d 523
(1937).
The only instance in which the court has declined to find de facto status is that in which the official in question acted in direct contravention to the constitution. See Matthews v. Bailey, Governor, 198 Ark. 830,131 S.W.2d 425 (1939) (governor was wholly without authority to appoint a member of the general assembly, and such member did not have de facto
status).
The situation in West Helena is more like the many cases in which the court has found de facto status. That is, the four members of the city council had "colorable" authority (as that concept has been defined by the court as discussed above) to fill the vacancy, although they did not have legal authority to do so. Their colorable authority arises out of the fact that city councils are authorized by law to fill vacancies, see
A.C.A. § 14-43-411(a)(1), but the procedure by which they exercised this authority was flawed. This is precisely the set of facts that the Arkansas Supreme Court has said will create de facto status. SeeFaucette, supra. These members of the city council therefore acted "under color of law" in filling the vacancy. Accordingly, I conclude that the member whom they appointed was a de facto city council member, but not ade jure[1] city council member.
Validity of Acts of De Facto Officer
Because this member had de facto status, his acts were valid and enforceable. The Arkansas Supreme Court and Arkansas Court of Appeals have held many times that the acts of de facto officers are valid and enforceable. See, e.g., Bell v. State, 334 Ark. 285, 973 S.W.2d 806
(1998) (assistant attorney general's participation in prosecution as defacto prosecutor did not render conviction invalid); Chronister v.State, 55 Ark. App. 93, 931 S.W.2d 444 (1996) (city attorney serving asde facto prosecutor was valid prosecution); Dilday v. State,300 Ark. 249, 778 S.W.2d 618 (1989);); Appleby v. Belden Corp.,22 Ark. App. 243, 738 S.W.2d 807
(1987) (Acts of de facto Workers' Compensation commissioners were valid); Casey v. Self, 236 Ark. 496, 367 S.W.2d 114
(1963) (order of de facto judge was enforceable); Brown v. Anderson,210 Ark. 970, 198 S.W.2d 188 (1946) (affidavits given by affiants who were sworn in by de facto notary public were valid); Forrest City Gro. Co. v.Catlin, Executor, 193 Ark. 148, 97 S.W.2d 910 (1936) (mortgage acknowledged before de facto notary was valid).
The court explained the policy reason for this rule in Faucette,supra. It stated:
 "[F]or the sake of order and regularity, and to prevent confusion in the conduct of public business and insecurity of private rights, the acts of officers de facto are not suffered to be questioned because of the want of real authority except by some direct proceeding instituted for the purpose by the State or by some one claiming the office de jure, or except when the person himself attempts to build up some right, or claim some privilege or emolument, by reason of being the officer which he claims to be. In all other cases the acts of an officer de facto are as valid and effectual, while he is suffered to retain the office, as though he were an officer by right, and the same legal consequences will flow from them for the protection of the public, which finds concise expression in the legal maxim that the acts of officers de facto cannot be questioned collaterally."
Faucette, supra, at 60, quoting Cooley on Constitutional Limitations (7th ed. at 897-98). Accord, Chronister v. State, 55 Ark. App. 93,931 S.W.2d 444 (1996); Landthrip v. City of Beebe, 268 Ark. 45,593 S.W.2d 458 (1980).
For the foregoing reasons, I conclude that because the council member who was appointed to fill the vacancy on the West Helena City Council in the situation you have described was a de facto member of the city council, his acts are valid and enforceable. They cannot be attacked collaterally.
This conclusion indicates among other things that any appointments made by the city council to the port authority are valid and enforceable, even though one of the members of the council at the time of such appointments was a de facto member. In fact, any members who were appointed to the port authority are de jure officers and cannot be removed on the grounds that one of their appointors may have been merely a de facto officer. This principle is explained in a leading treatise on the de facto
doctrine, as follows:
 General rule in America sustains validity of appointments made by de facto officers. — The English rule, however, [holding to the contrary] is not approved by the weight of authority in the United States, and it is generally held that the appointees of de facto officers have a good title to their office, even if their appointors are subsequently ousted.
Constantinea on the De Facto Doctrine, § 346 (1910) (citing such cases asState v. Badger, 90 Mo. App. 183 (1901); State v. Powell, 101 Iowa 382,70 N.W. 592 (1897); Hawkins v. Jonesboro, 63 Ga. 527 (1879); Norfleet v.Staton, 73 N.C. 546 (1875); Brady v. Howe, 50 Miss. 607 (1874); Robertsv. Holmes, 54 N.H. 560 (1874); and State v. Jacobs, 17 Ohio 143 (1848)).
The foregoing principle is the basis for my conclusion that any appointments made by the city council at a time when one council member was a de facto member are valid.
Question 2 — Who has the legal responsibility or right to see that theimproper council member and improper port authority members are removedfrom office?
As indicated above in response to Question 1, the port authority members are de jure officers and are not "improperly" holding office. They therefore cannot be removed on such grounds. However, the de facto city council member can be removed from office under the "usurpation" statute, A.C.A. § 16-118-105. The Arkansas Supreme Court has held that defacto officers are "usurpers" within the meaning of this statute and can be removed. See Looper v. Thrash, 334 Ark. 212, 972 S.W.2d 250 (1998)
The usurpation statute states in full:
 In lieu of the writs of scire facias and quo warranto, or of information in the nature of a quo warranto, actions by proceedings at law may be brought to vacate or repeal charters and prevent the usurpation of an office or franchise.
 (b)(1) Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise.
 (2) A person who continues to exercise an office after having committed an act, or omitted to do an act, of which the commission or omission, by law, created a forfeiture of his office, shall be subject to be proceeded against for a usurpation thereof.
 (3)(A) It shall be the duty of the prosecuting attorney to institute the actions mentioned in this section against all persons who usurp county offices or franchises where there is no other person entitled thereto or the person entitled fails to institute the action for three (3) months after the usurpation.
 (B) For usurpation of other than county offices or franchises, the action by the state shall be instituted and prosecuted by the Attorney General.
 (4)(A) Where a person is adjudged to have usurped an office or franchise, he shall be deprived thereof by the judgment of the court, and the person adjudged entitled thereto shall be reinstated in the office or franchise; but no one shall be adjudged entitled thereto unless the action is instituted by him.
 (B) The court shall have power to enforce its judgment by causing the books and papers, and all other things pertaining to the office or franchise, to be surrendered by the usurper, and by preventing him from further exercising or using the office or franchise, and may enforce its orders by fine and imprisonment until obeyed.
 (5) Where the usurper has received fees and emoluments arising from the office or franchise, he shall be liable therefor to the person entitled thereto, who may claim the fees and emoluments in the action brought to deprive him of the office or franchise or in a separate action. If no one is entitled to the office or franchise, the fees and emoluments may be recovered by the state and paid into the public treasury.
 (c) The action to repeal or vacate a charter shall be in the name of the state and brought and presented by the Attorney General or, under his sanction and direction, by an attorney for the state.
 (d) The pleadings in the actions named in this section are not required to be verified by affidavit unless prosecuted by a private individual.
A.C.A. § 16-118-105 (emphasis added).
Under the unambiguous language of the statute, emphasized above, once a usurpation has been identified, I am required to institute actions for the ouster of usurpers of offices other than county offices. (Such an action can also be instituted by persons who are entitled to hold the office in question, see Section (b)(1) above), but in the situation you have described, where there was a vacancy in the office, created by the death of the incumbent, this provision is not pertinent.) I must therefore conclude that in the situation you have described, the Attorney General has the responsibility to pursue an action to remove the defacto city council member from office. State v. Tyson, 161 Ark. 42,255 S.W. 289 (1923).
It should be noted that there is authority upon the basis of which local taxpayers may initiate an illegal exaction action in chancery court for the purpose of recovering salary paid to the de facto council member, to protect the city's revenue, or to enjoin the de facto member from serving. See Harvey v. Ridgeway, 248 Ark. 35, 450 S.W.2d 281 (1970);Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963). Taxpayers may also petition in circuit court for a declaratory judgment that the officer is ineligible. See Jones v. Clark, 278 Ark. 119, 644 S.W.2d 257
(1983); White v. Hankins, 276 Ark. 562, 637 S.W.2d 603 (1982); Martindalev. Honey, 259 Ark. 416, 533 S.W.2d 198 (1976). These actions would not technically have the effect of ousting the member, although they could have this practical effect. For a discussion of this issue, see Wills,Constitutional Crisis: Can the Governor (Or Other Officeholder) BeRemoved From Office In a Court Action After Being Convicted of aFelony?, 50 Ark. L.R. 221 (1997).
Question 3 — What is the proper procedure to remove a person who iswrongfully holding a position on the city council or the port authority?
Now that a usurpation of a city council position has been identified, the proper procedure for the ouster of the de facto city council member would be for me to initiate an action in circuit court for the removal of this individual.
Question 4 — Does the city attorney of a city of the first class have anyobligation or responsibility to defend each wrongful office holder?
The answer to this question will depend upon the city attorney's duties as outlined by city ordinance. Under state law, city attorneys are required to perform the duties that are imposed upon them by the city council. See A.C.A. § 14-43-313, -314. State law does not spell out those duties, but rather grants city councils the authority to do so. Therefore, in the situation you have described, the question of whether the city attorney has the responsibility to defend an ouster action will depend entirely upon whether such responsibility is imposed by the city ordinance that creates the city attorney's duties.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] An officer `de jure' is one who is in all respects legally appointed and qualified to exercise the office; one who is clothed with the full legal right and title to the office; in other words, one who has been legally elected or appointed to an office, and who has qualified himself to exercise the duties thereof according to the mode prescribed by law." Brown v. Anderson, 210 Ark. 970, 198 S.W.2d 188 (1946), quoting 46 C.J. 927.