George WEBB, J. Bill BECKER, Jimmy CLARK, Individually, and on Behalf of All Others Similarly Situated, and ARKANSAS STATE AFL-CIO *v.* WORKERS' COMPENSATION COMMISSION

86-270                                        730 S.W.2d 222*

Supreme Court of Arkansas
Opinion delivered June 1, 1987
[Rehearing denied July 6, 1987.]

---

* Justice Newbern's opinion can be found at 733 S.W.2d 726.

*Youngdahl & Youngdahl, P.A.*, by: *James E. Youngdahl* and *Thomas H. McGowan*, for appellant.

*Steve Clark*, Att'y Gen., by: *Frank J. Wills*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. ▇ The Workers' Compensation Act, Ark. Stat. Ann. §§ 81-1301 to -1367 (Repl. 1976 and Supp. 1985), provides benefits to employees killed or injured in the course of their employment. The Workers' Compensation Commission is charged with administration of the Act and with reviewing decisions of Administrative Law Judges concerning disputed claims. Ark. Stat. Ann. §§ 81-1325 to -1342. The Commission acts in a quasi-judicial capacity and its awards are in the nature of judgments. The Act provides a symmetry for the composition of the tripartite commission. The Governor appoints all three Commissioners. Ark. Stat. Ann. § 81-1342(a). One member is to represent employers' interests, one member is to represent employees' interests, and the third, the neutral chairman is to be an attorney with at least five years experience in the practice of law. Former Governor White appointed Melvin Farrar, an employer for 25 years, to serve as the employees' representative on the Commission. Appellants sought to challenge the qualifications of Commissioner Farrar. The trial court dismissed the action. We reversed, reinstated the action, and remanded for trial. *Webb* v. *Workers' Compensation Commission*, 286 Ark. 399, 692 S.W.2d 233 (1985). Both parties then filed motions for summary judgment. The trial court held that the governor had the authority to determine who is qualified to serve

as the representative of employees and that Commissioner Farrar was not disqualified from serving even though he was an employer. We reverse.

█ In order to insure the balance between employers and employees, the Act plainly requires that the employee representative on the Commission satisfy two requirements: (1) five years of past union membership and (2) classification as a representative of employees. Ark. Stat. Ann. § 81-1342(a). These two requirements must be viewed in light of the members' "previous vocation, employment or affiliation." Ark. Stat. Ann. § 81-1342(a).

It is undisputed that Commissioner Farrar met the first requirement, five years of past union membership, as he was a member of a union from the early 1950's until 1978. It is the second requirement which Commissioner Farrar fails to satisfy. In a supporting document to the motion for summary judgment, Commissioner Farrar admitted that the last time he was an employee was in 1957 and from that time until his appointment he was a small businessman who hired and fired his own employees.

█ The Commission does not dispute the fact that Commissioner Farrar was an employer for the 25 years preceding his appointment, but instead argues that the courts should not interfere with gubernatorial appointments unless the governor has abused his discretion. Admittedly, the gubernatorial power of appointment is vested with a reasonable latitude of discretion in classifying the persons to be appointed to the Commission, but that discretion is not without limit or restraint. The classification of appointees to the Commission must measure up to minimal legal standards in order to comply with the requirements of the Act. Whether such requirements have been met is subject to judicial review, and if they have not been met appropriate relief may be granted. *Hogan* v. *Davis*, 243 Ark. 763, 422 S.W.2d 412 (1967).

█ In light of his "previous vocation, employment, or affiliation," Commissioner Farrar does not minimally meet the requirement of being "classed as a representative of employees" and, solely on that basis, is not qualified to hold that office.

Reversed.

NEWBERN, J., concurs.

DAVID NEWBERN, Justice, concurring. The majority opinion is correct in holding that Commissioner Farrar's appointment to the Workers' Compensation Commission was not in compliance with Ark. Stat. Ann. § 81-1342(a) (Repl. 1976). The Arkansas Court of Appeals reviews the decisions of the commission. Ark. Stat. Ann. § 81-1325(b) (Supp. 1985). As a member of that court in 1979 and 1980, I began to question the wisdom of composing a quasi-judicial body, such as the commission, of advocates for the points of view always at odds in the cases before it. My skepticism has since grown, and I must take this opportunity to discuss a law that requires us to hold, as we do today, that a commissioner is disqualified because his background is not of the sort that will assure he is sufficiently partial.

The creation of an entity such as the commission, which is recognized to be an administrative body but which has one function which is purely adjudicative, brings on problems associated with courts. *See* C. Koch, *Administrative Law and Practice*, § 6.7 (1985). Although it is not a court per se, the commission has replaced the courts' adjudicative function with respect to the claims of injured workers, at least at the first hearing and review levels.

The commission has the responsibility of adjudicating an enormous number of claims involving huge sums of money. In its Annual Report for 1984, entitled "Costs and Characteristics of Occupational Injuries and Illnesses in Arkansas" the commission reported that it had, in that year, closed 8,972 cases with $30.1 million in indemnity compensation and $25.2 million in adjudicated medical and other costs for a total of $55.2 million. In its Biennial Report for 1984-1986, the commission reported for the period from July 1, 1984 to June 30, 1985, total compensation expenditures of $91,751,878. For the period from July 1, 1985 to June 30, 1986, the total was $89,582,074.

The adjudication of these claims begins with a hearing before an administrative law judge (ALJ). It is an adversary proceeding, but designed to be informal. The ALJ's decision is then reviewed by the commission if one party or the other is

dissatisfied with the result reached by the ALJ. There may have been a time when the commission actually heard witnesses give live testimony when its members wished to redo the work of the ALJ. Given the numbers of claims today, however, that would be impractical if not impossible. The commission has the power to, and presumably does, permit argument before it either orally or in the form of briefs and it may admit additional evidence in its de novo review of the decision of the ALJ. It would surely be wasteful, however, to hold the hearing with the live witnesses a second time, so the decision of the commission is much like that of an appellate court; it operates from a cold, or at best, warmed-over, record.

Thus the ALJ position has been upgraded. The ALJ is no longer just an aide to the commission or a referee. The title, "Administrative Law Judge" appears in the commission's official publications. *See* the Biennial Report referred to above. Although Ark. Stat. Ann. § 81-1344 (Repl. 1976) refers to "referee," the duty of that officer is "to hear and determine claims for compensation, and to conduct such hearings and investigations and to make such orders, decisions, and determinations as may be required by any rule or order of the Commission." The evolution of the position is best described in *Civil Service Commission* v. *Department of Labor*, 424 Mich. 571, 384 N.W.2d 728, *amended*, 425 Mich. 201, 387 N.W.2d 384 (1986). Michigan has undertaken a formal restructuring of its commission similar to that which has taken place informally elsewhere. The Michigan Supreme Court noted the existence of a condition in that state like that which exists here specifically as a result of our § 81-1345, that is, that our ALJs do not just render "findings" on behalf of the commission but render "decisions" to be reviewed by the commission.

Despite the fact that it is the ALJ who hears the witnesses and has the opportunity to see them face to face, we persist in holding that his or her decision is meaningless when a decision of the commission is on appeal. *See Dedmon* v. *Dillard Department Stores, Inc.*, 3 Ark. App. 108, 623 S.W.2d 207 (1981). That is the view of the majority of the courts. *See* 3 Larson, *The Law of Workmen's Compensation*, § 80.12(c) (1983). However, there is a growing minority view perhaps led by the Federal Longshoremen's and Harbor Worker's Compensation Act, P.L. 92-576, §

21(b) (3). It is now held in Florida, for example, that the commission cannot reverse the findings of fact made by a hearing officer unless the findings are not sustained by competent, substantial evidence, and on appeal from the commission the court must determine whether the commission observed the substantial evidence rule when it reviewed the officer's findings and order. *See United States Casualty Company* v. *Maryland Casualty Company*, 55 S.W.2d 741 (Fla. 1951). *See also Powell* v. *Industrial Commission*, 4 Ariz. App. 172, 418 P.2d 602 (1966); *Universal Cyclops Steel Corporation* v. *Workmen's Compensation Appeals Board*, 9 Pa. 176, 305 A.2d 757 (1973); *R & R Well Service Company* v. *Industrial Commission*, 658 P.2d 1389 (Colo. App. 1983); *A.D. Braun* v. *Industrial Commission*, 36 Wisc. 2d 48, 153 N.W.2d 81 (1967); *Delesky* v. *Tasty Baking Company*, N.J. Super. A.D. 420 A.2d 1022 (1980); *Davol, Inc.* v. *Aguiar*, 463 A.2d 170 (R.I. 1983).

In Florida it has been recognized that the Industrial Relations Commission, similar to our commission, exercises the functions of a court. *Scholastic Systems* v. *LeLoup*, 307 So.2d 166 (Fla. 1975). It has been held in Georgia and in California that the Code of Judicial Conduct applies to the officers who adjudicate these important claims. *Delta Air Lines, Inc.* v. *McDaniel*, 176 Ga. App. 523, 336 S.E.2d 610 (1985). *Fremont Indemnity Co.* v. *Workers' Compensation Appeal Board*, 153 Cal. App. 3d 965, 200 Cal. Rptr. 762 (1984). We have yet to consider that issue.

Given the changes going on around us, and given the changes which have come about by necessity in our own workers' compensation scheme since our commission was created by Initiated Act 4 of 1948, it occurs to me that we should be thinking of creating a system in which the decisions of the ALJs are like those of juries, to the extent that the factual determinations should be reviewed only to determine if they are supported by substantial evidence. An alternative would be to review them as the factual decisions of trial judges are reviewed in other civil cases, i.e., to determine if they are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a).

No matter what standard of review is chosen, however, the reviewing body need not be poised to recreate the adversarial

arguments and adversarial positions taken and protected at the hearing level. Requiring management and labor representatives on such a reviewing body, so analogous to a court, is like assuring that our court of appeals or this court be composed of equal numbers of plaintiffs' advocates and defendants' advocates in tort cases. In any body exercising the function of legal review, the public is entitled to, and should, demand the putting aside of social philosophies which are the stuff of legislation. That may not be entirely possible, but at the very least, we should not encourage the advocacy of such points of view when we are empowering a tribunal to interpret the law and apply it to facts rather than to make the law to be applied.