Joan APPLEBY *v.* BELDEN CORPORATION and
LIBERTY MUTUAL INSURANCE COMPANY

CA 87-167 738 S.W.2d 807

Court of Appeals of Arkansas
Division I
Opinion delivered November 4, 1987

244

*Tripcony Law Firm, P.A.*, by: *James L. Tripcony*, for appellant.

*Friday, Eldredge & Clark*, by: *Elizabeth J. Robben* and *James C. Baker*, for appellee.

JOHN E. JENNINGS, Judge. This is a workers' compensation case. Joan Appleby sustained a compensable injury to her back when she tripped and fell in the parking lot of her employer, Belden Corporation, on June 2, 1983. Her healing period was determined to have ended on December 6, 1983. She received benefits including 5% permanent partial disability. In 1984, her primary physician, Dr. Saer, said that Appleby "should probably be on some form of activity restriction indefinitely. This would involve limited bending and stooping, no heavy lifting over about 25 pounds, and no prolonged sitting or standing."

Mrs. Appleby did not return to work for Belden Corporation and has not sought other employment, but in the spring of 1985 she began helping her husband paint houses. The work was sporadic: she might work as many as six, or as few as three, days a week. Her work involved some carrying of a 14 pound ladder from which she painted. She testified that she had bouts of pain in her back and legs during the time period she was engaged in painting.

On October 9, 1985, Appleby cleaned her house, mopped the floors, went to a funeral, and picked up hickory nuts from her backyard. That evening she had more pain in her back and legs. On October 10, 1985, she painted with her husband briefly and by that night she was in so much pain that she called Dr. Saer and made an appointment to see him the next day. On October 13, 1985, she again contacted Dr. Saer and asked to be hospitalized.

Dr. Saer put her in the hospital on October 17. He testified that "probably her symptoms were caused by her activity level prior to her admission. When you consider her problem from before, the activities such as mopping the floor and painting would be sufficient to cause the type of problems she experienced when I hospitalized her."

The appellant subsequently filed a claim for additional compensation. The Commission held that her activities prior to her hospitalization constituted an independent intervening cause and denied the claim.

 Appellant's first argument is that this finding is not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983). On review, in workers' compensation cases, we view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission. *McCollum* v. *Rogers*, 238 Ark. 499, 382 S.W.2d 892 (1964). We do not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

 The issue in *Guidry* v. *J & R Eads Construction Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984), was the same as the issue here. In *Guidry*, we said that the question is whether there is a causal connection between the primary injury and the subsequent disability; and if there is such a connection, there is no independent intervening cause unless the subsequent disability was triggered by activity on the part of the claimant which was unreasonable under the circumstances.

One of the circumstances which should be considered in deciding if the "triggering activity" was reasonable is the claimant's knowledge of his condition. *See* Larson, *The Law of Workmen's Compensation* § 13.11 (1986). In this case Dr. Saer testified:

> I explained to her that she had an injury to her back and she is likely to have problems with her back, depending on her

activity level in the future and she will be able to control her symptoms by controlling her activity. We had gone through this before and she had been to the back school before. A lot of people have this problem and do well as long as they're somewhat judicious in activity and if they overdo it, they're likely to cause a flareup and that's basically her situation.

■ Based on the facts of the case at bar, we believe that the Commission's finding of an independent intervening cause is supported by substantial evidence.

Appellant's second argument is that the case must be reversed because it was decided at the Commission level without a quorum. Ark. Stat. Ann. § 81-1342(e) (Repl. 1976), provides:

A majority of the Commission shall constitute a quorum for the transaction of business, and vacancies shall not impair the right of the remaining members to exercise all the powers of the full Commission, so long as a majority remains.

This case was decided by the full Commission on January 8, 1987. The order is signed by Commissioner Tatum and Commissioner Farrar, with Commissioner Griffin not participating.

In an opinion delivered June 1, 1987, the Arkansas Supreme Court held that Commissioner Farrar did not meet the statutory requirements for service on the Commission. *Webb* v. *Workers' Compensation Commission*, 292 Ark. 349, 730 S.W.2d 222 (1987). Appellant's argument is that her claim was decided by only one qualified commissioner, and one commissioner does not constitute a quorum. This argument must fail.

■ Farrar was clearly a *de facto* official. A *de facto* official is one who by some color of right is in possession of office and for the time being performs his duties with public acquiescence, though having no right in fact. The acts of an officer *de facto* are as valid and effectual, while he is permitted to retain the office, as though he were an officer by right. *State* v. *Roberts*, 255 Ark. 183, 499 S.W.2d 600 (1973); *Faucette, Mayor* v. *Gerlach*, 132 Ark. 58, 200 S.W. 279 (1918). The acts of an officer *de facto* cannot be questioned collaterally. If the officer's title is questioned in a proceeding to which he is not a party or which was not

instituted specifically to determine the validity of his title, the attack is collateral. *State* v. *Roberts*, cited above; *see also, Keith* v. *State*, 49 Ark. 439, 5 S.W. 880 (1887).

The official actions taken by Farrar while serving as commissioner were legally valid and effectual notwithstanding the supreme court's determination that he was not qualified to serve.

Affirmed.

CORBIN, C.J., and COULSON, J., agree.