The Honorable Lindbergh Thomas State Representative Post Office Box 505 Grady, AR 71644-0505
Dear Representative Thomas:
I am writing in response to your request for my opinion on the following questions:
 1. Pursuant to provisions of A.C.A. 6-13-1405(a)(5), as amended by Act 60 of the 2003 (2d Ex. Sess.), is the former Dumas School District considered an "affected district," and, if not, does Arkansas law require that the interim board of the new consolidated school district be made up entirely of board members from the board of directors of the former Gould School District?
 2. Assuming that the Dumas School District qualifies as an" affected district," does the proportionate requirement set forth in A.C.A. 6-13-1405(a)(5)(ii) [sic: "-1405(a)(5)(C)(ii)"] mandate that one, but not more than one, of the board members on the interim board of the consolidated Dumas-Gould School District should come from the former Gould School District?
 3. Does Arkansas law prohibit the interim board of the consolidated Dumas-Gould School District from consisting of six (6) board members?
 4. If the proportionate requirement set forth in 6-13-1405(a)(5)(C)(ii) and 6-13-1406(b)(1) precludes the interim board from having more than one member from the former Gould School District, what is the proper procedure for selecting the seventh (7th) board member?
 5. Since the six (6) member interim board of the consolidated Dumas-Gould School District currently consists of five (5) board members from the former Gould [sic:" Dumas"] School District, is this a legally constituted interim board under Arkansas law and, if not, would its actions nevertheless be deemed legal and binding under the concept of a de facto board or other principles of law?
As reflected in my interpolation in your fifth question, my inquiries reveal that the interim board comprises the entire five-member former Dumas School District board, not the Gould School District board, with one additional member from the former Gould School District board.
You further report the following factual background:
 Because of the state mandated Dumas-Gould consolidation, the districts are required to form an "interim" school board, which will govern the new district until a new board is elected. . . .
* * *
 The order of consolidation . . . provides that the Gould School District ceased to exist effective July 1, 2004, but the order does not provide that the Dumas School District ceased to exist. The order further provides that the boundary lines of the Gould School District and the Dumas School District be changed to reflect the new boundaries of the "resulting Dumas School District."
RESPONSE
With respect to your first question, I believe the former Dumas School District is an "affected" district for purposes of determining the composition of the board. With respect to your second question, I believe the board should comprise four members from the former Dumas School District and one member from the former Gould School District. Achieving this end would entail reducing the former Dumas School District's representation on the interim board by one member pursuant to the procedure set forth at A.C.A. § 6-13-606. With respect to your third question, A.C.A. § 6-13-1406(f) mandates that the new board have an odd number of members. With respect to your fourth question, I believe it would offend the proportionality requirement set forth at A.C.A. §6-13-1405(a)(5)(C)(ii) if the board were increased by one member of the former Gould School District. I further believe it would be impermissible to appoint any other individual to serve as a seventh member of the interim board, given that the entire board of the former Dumas School District currently serves on the interim board and A.C.A §6-13-1405(a)(5)(C)(i) mandates that all interim board members have been board members of the former districts. The only option, then, would appear to be to reduce the interim board by one member pursuant to A.C.A. § 6-13-606. With respect to your fifth question, I do not believe the current Dumas Interim School Board is duly constituted under Arkansas law. However, I do believe the actions of the board are legally binding under the doctrine of de facto officeholding.
Question 1: Pursuant to provisions of A.C.A. 6-13-1405(a)(5), as amendedby Act 60 of the 2003 (2d Ex. Sess.), is the former Dumas School Districtconsidered an "affected district," and, if not, does Arkansas law requirethat the interim board of the new consolidated school district be made upentirely of board members from the board of directors of the former GouldSchool District?
In my opinion, the former Dumas School District is an "affected district," as that term is used in A.C.A. § 6-13-1405(a)(5), as amended by Act 60 of 2003 (2nd Ex. Sess.). The applicable definition of "affected district" applicable in the event of an administrative consolidation of the sort at issue in your request is set forth at A.C.A § 6-13-1601(3), as likewise enacted in Act 60 of 2003 (2nd Ex. Sess.),[1] which defines the term to mean "a school district that loses territory or students as a result of administrative annexation or consolidation." This definition is a slightly narrower version of the definition set forth at A.C.A § 6-13-1401(1), which defines "affected district" as "a school district that loses territory or students as a result of annexation or consolidation."[2]
The question of whether a district that is the subject of an involuntary administrative consolidation can be described as "affected" matters because A.C.A § 6-13-1405(a)(5)(C), as amended by Act 60 of 2003 (2nd
Ex. Sess.), provides:
 (i) The interim board shall be made up of board members from the boards of directors of the affected school districts.
 (ii) The proportion of board members from each of the affected school districts shall be equal to the proportion of the student population in the resulting school district that came from each affected school district.
As this statute suggests, only an "affected" former district is entitled to representation on the interim board of the newly formed district, and only then in proportion to the former district's total student population relative to the entire student population of the newly consolidated district.
The former Gould School District was included on the Department of Education's consolidation list pursuant to A.C.A § 6-13-1602, which mandates that a district consolidate with one or more others if the district had fewer than 350 students as measured by the district's average daily membership in each of the two school years immediately preceding the 2003 school year. With respect to any such district whose petition to be annexed by or consolidated with another school is denied, A.C.A. § 6-13-1603(3) provides:
 Any school district on the consolidation list that does not submit a petition pursuant to subdivision (a)(2)(A) of this section or that does not receive approval by the state board for a voluntary consolidation
or annexation petition shall be administratively consolidated by the state board with or into one (1) or more school districts by June 1, to be effective the July 1 immediately following the publication of the list required under § 6-13-1602.
(Emphasis added.)[3]
You report that the Board of Education denied the Gould School District's petition to be consolidated with the Grady School District, thus triggering application of the statute just quoted. You have attached to your request an order issued by the Board of Education denying the Gould School District's petition and administratively consolidating the Gould School District with the Dumas School District. More specifically, the order declares that the Gould School District is "administratively consolidated with the former Dumas School District into the new Dumas School District." The order on several other occasions refers to "the administrative consolidation of the Gould School District with the Dumas School District" and twice refers to the new district as "the resulting Dumas School District."
As the foregoing should suggest, all districts subject to administrative consolidation will qualify as "affected" under the definition set forth at A.C.A. § 6-13-1601(3), because each such district will effectively cease to exist and hence qualify as one "that loses territory or students as a result of . . . consolidation." Although one might initially be inclined to conclude that the Dumas School District cannot qualify as "affected" because it in fact has gained both territory and students as a result of the administrative consolidation, I do not believe this conclusion can withstand scrutiny. In my opinion, it is immaterial that the resulting district following consolidation bears the same name as one of its constituent districts; the only pertinent fact is that the new Dumas School District is just that — "new," as the Board of Education acknowledges in its order.[4] It is simply not the case that the former Dumas School District survives in a larger form, and hence does not qualify as "affected." It is in the very nature of an administrative consolidation to take all of the territory and students contained within two or more districts and to grant all of the combined territory and students to an entirely new district, however denominated. As an analytical matter, then, all of the constituent districts subject to consolidation will have lost territory and students, thus qualifying them as "affected" under the statutory definition.[5] To conclude in the alternative that the new Dumas District is merely an expansion of the former Dumas School District, and as such cannot be described as "affected," would mean that the former Dumas School District, despite having been much larger than the former Gould School District, would be completely deprived of representation on the interim board. In my opinion, this result would not accord with the concept of "consolidation" and would lead to an absurd result directly contrary to the legislative intent underlying the enactment of A.C.A. § 6-13-1406(b). The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479, 484,987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272,948 S.W.2d 1 (1998); Citizens To Establish A Reform Partyv. Priest, 325 Ark. 257, 926 S.W.2d 432
(1996); Henson v. Fleet Mortgage Co., 319 Ark. 491,892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312, 877 S.W.2d 589 (1994);Death and Total Permanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992).
The pertinent references to "affected school districts" in this instance are contained in A.C.A. § 6-13-1405, as amended by Act 60 of 2003 (2nd
Ex. Sess.), which provides in pertinent part:
 (a) Upon consolidation or annexation of a school district by the State Board of Education:
* * *
 (5)(A)(i) The state board shall afford the local school districts in a consolidation thirty (30) days to establish an interim local board to govern the resulting district pursuant to § 6-14-1406 [sic: "§ 6-13-1406"] until the next school election.
 (ii) If the consolidation is under § 6-13-1602, the resulting school districts shall establish an interim board by May 31 immediately preceding the effective date of consolidation.
 (B) If the local school districts fail to establish an interim board, the state board shall appoint an interim local board to serve until the next elected board assumes office.
 (C)(i) The interim board shall be made up of board members from the boards of directors of the affected school districts.
 (ii) The proportion of board members from each of the affected school districts shall be equal to the proportion of the student population in the resulting school district that came from each affected school district.[6]
(Emphases added.) In accordance with the analysis offered above, I believe the term "affected districts" clearly refers to all of the merging districts, with the goal in mind of creating a new district whose board membership will be proportional to the student population of the merging districts. This reading, which accords fully with common sense, clearly suggests that all of the districts participating in a consolidation will have a voice in shaping the interim board.
Question 2: Assuming that the Dumas School District qualifies as an"affected district," does the proportionate requirement set forth inA.C.A. 6-13-1405(a)(5)(ii) [sic: "-1405(a)(5)(C)(ii)"] mandate that one,but not more than one, of the board members on the interim board of theconsolidated Dumas-Gould School District should come from the formerGould School District?
I believe the answer to this question is "yes," but only because allowing the former Gould School District board one member on the interim board would fulfill the proportionality requirement as closely as possible.
You report that before consolidation the Gould School District had 210 students and the Dumas School District had 1541 students, meaning that approximately 12% of the new district's students were served by the former Gould School District. As noted above, A.C.A. § 6-13-1405(a)(5)(C)(ii) provides:
 The proportion of board members from each of the affected school districts shall be equal to the proportion of the student population in the resulting school district that came from each affected school district.
A question immediately arises regarding how many members might serve on an interim board in order to comply as closely as possible with this proportionality requirement. Subsection 6-13-1603(l), which was enacted pursuant to Act 60 of 2003 (2nd Ex. Sess.), provides: "The provisions of § 6-13-1406 shall govern the board of directors of each resulting or receiving school district created under this subchapter." With respect to a consolidation, A.C.A. § 6-13-1406(b), which was enacted pursuant to Acts 2001, No. 1225, § 1 and not amended thereafter, provides in pertinent part:
 (1) Unless the boards of directors of the affected districts agree otherwise, the board of directors of the resulting district after consolidation shall be composed of seven (7) members until the next regular school election.
 (2) The boards of directors of the affected districts may by agreement establish a board of directors of the resulting district composed of not fewer than five (5) nor more than seven (7) directors except for those school districts allowed to do otherwise pursuant to § 6-13-604. [7]
Subsection (b)(2) of this statute vests the boards of the merging districts with discretion to set the size of the new board at any number from five to seven. However, this statute must be read in conjunction with A.C.A. § 6-13-1406(f), which was likewise enacted pursuant to Acts 2001, No. 1225, § 1, prohibiting "the establishment of a board of directors with an even number of members following annexation or consolidation." At the very least, then, the merging boards' discretion is limited to choosing either five or seven, but not six, members for the newly merged district. Compare Ark. Op. Att'y Gen. No. 2002-233 (opining that A.C.A. § 6-13-1406(f) bars only the "establishment" of a board with an even number of members and does not apply to a board already in existence at the time of the statute's enactment).
However, although the above statutes clearly locate in the merging boards the authority to set the size of the board in the newly consolidated district at five, seven, or, in the case of a district having an average daily attendance of students exceeding 24,000, nine members, more recent legislation casts into doubt precisely who will determine the size of the new board, including the interim board. For instance, A.C.A. §6-13-1405(a)(2), enacted pursuant to Acts 2003, No. 1467, § 19, provides:
 The State Board of Education shall prescribe the number of members of the board of directors of the resulting or receiving district, and prescribe the method of forming the board of directors of the resulting or receiving district[.]
It is difficult to discern from these various statutes whether the boards of the merging districts or the Board of Education has the ultimate authority to determine the number of members on the board of a newly consolidated district. Act 60, which constitutes the most recent pertinent legislation, only obliquely addresses the issue in directing that "[t]he provisions of § 6-13-1406 shall govern the board of directors of each resulting . . . school district created under this subchapter." As noted above, A.C.A. § 6-13-1406(b) provides that the board of directors of a newly consolidated district shall comprise seven members unless otherwise specified by law or unless the boards of the consolidating districts agree to a number not fewer than five nor more than seven — which, given the prohibition against boards having an even number of members, means five. Compare A.C.A. §§ 6-13-1405(b)(2) and -1405(b)(3) (providing that in the case of a voluntary consolidation, the boards of the affected districts may agree in writing to the number of members that will serve on the board of the resulting district). However, Act 60 at no point even acknowledges the fact thatAct 1476 of 2003 had only recently before enacted A.C.A. § 6-13-1405(a)(2), which expressly located in the Board of Education the duty to specify the number of directors in a resulting district after consolidation.
If at all possible, I am obliged to reconcile the apparent tensions in the legislation discussed above. In attempting to resolve these conflicts I am guided by various principles of statutory construction. First, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City ofFort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly. Uilkie v. State,309 Ark. 48, 827 S.W.2d 131(1992); Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; WardSchool Bus Mfg., Inc. v. Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977).
Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith,268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session, Sargent v.Cole, 269 Ark. 121, 598 S.W.2d 749 (1980), although, in such a case, the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v.Gates, 180 Ark. 96, 21 S.W.2d 406 (1929). With regard to internally conflicting acts, A.C.A. § 1-2-207(b) provides:
 When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.
The presumption, then, is that two acts passed during the same session that address the same subject were actuated by the same policy and that both were intended to be given effect. See Sutherland on StatutoryConstruction, § 23.17 (5th ed., 1993); Adams v. Arthur,969 S.W.2d 598, 333 Ark. 53 (1998); Horn v. White, 225 Ark. 540,284 S.W.2d 122 (1955). However, the Arkansas Supreme Court has held that this rule must yield if doing so is necessary in order to effectuate legislative intent. Horn, supra. Moreover, the court has held that if two acts that are passed at the same legislative session contain conflicting clauses, the whole record of legislation will be examined to ascertain the legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment. Id.
Given the farrago of very recent legislation on the question of who determines the number of directors in a newly consolidated district,[8]
I do not feel able to simply apply without qualification the rule that the legislation most recently addressing an issue will control — particularly in light of the fact that Act 60 only addresses this issue indirectly by reference to an earlier statute and that it does not expressly repeal what might be read as conflicting legislation. I can only say that my inquiries reveal that merging districts are apparently making the decision regarding the size of the resulting board, apparently doing so in accordance with the restrictions on size set forth at A.C.A. § 6-13-1406(b). I cannot opine that this practice offends the legislature's intent. However, under the circumstances, I believe legislative clarification is warranted.
Having offered this qualifier, I will opine that regardless of what entity should determine the number of directors on an interim board following consolidation, that entity will remain subject to two legislative mandates: (1) the proportionality requirement set forth at A.C.A. § 6-13-405(a)(5)(C)(ii), as amended by Act 60; and (2) the directive, set forth at A.C.A. § 6-13-1405(a)(5)(C)(i), as likewise amended by Act 60, that "[t]he interim board shall be made up of board members from the boards of directors of the affected school districts."
With respect to the proportionality requirement, given the numerical distribution of students in the former Gould School District and Dumas School District, absolute mathematical proportionality would entitle the former Gould School District to 0.84 of a vote if the interim board were to comprise seven members and 0.60 of a vote if the interim board were to comprise five members. I do not consider this disparity significant since the Gould School District would be entitled to one representative on the interim board in either case. Compare A.C.A. §6-13-1406(a)(1)(B)(ii)(a), as amended by Acts 2003, No. 25, § 1 (2nd
Ex. Sess.) (providing that in the event of an annexation, as opposed to a consolidation, if the board of the affected district and the board of the receiving district agree that an interim board will serve until the school election in the year following the effective date of the annexation, the interim board will comprise the board of the receiving district and at least one member selected by the board of each affected district merged into the receiving district). It follows that regardless of what number of members should serve on the interim board of the newly consolidated Dumas School District, the former Gould District will be overrepresented until the election for the permanent board occurs — a condition that strikes me as an unavoidable mathematical consequence of the two former districts' student populations.
With respect to the requirement that the interim board comprise only members of the former school district boards, I believe that under the circumstances that apply in the newly created Dumas School District, the Code precludes increasing the number of interim board members to more closely comply with the proportionality requirement. Subsection6-13-1405(a)(5)(C)(i) of the Code, as amended by Acts 2003, No. 60 (2nd
Ex. Sess.), provides that only members of the affected former boards may serve on the interim board of a newly consolidated district. In my opinion, this statute trumps A.C.A. § 6-13-604 (Repl. 1999), which provides that a board authorized to have five or more directors may petition the Board of Education to increase its membership either up to seven or nine, as otherwise permitted by law. I do not believe the latter statute can be read as authorizing an increase in the number of the new Dumas School District interim board members, since A.C.A. §6-13-1405(a)(5)(C)(1) is unambiguous in declaring that the interim board of an administratively consolidated school district "shall be made up of board members from the boards of directors of the affected school districts" — a restriction that would preclude increasing the membership of the interim board by naming any additional members who did not serve on the boards of the constituent districts. As I understand the facts, all five members of the former Dumas School District board currently serve on the interim board, as does one member of the former Gould School District board. To fill the additional slot on a seven-member interim board with a former Gould School District member would clearly violate the proportionality requirement, since it would considerably exacerbate the former Gould School District's already disproportionate representation on the interim board. Moreover, because the entire former board of the Dumas School District now serves on the interim board, no member of that former board is available to fill the seventh slot.
It would appear, then, that the only available option would be to form a five-member board, meaning that one of the current interim board members from the former Dumas School District would have to be removed. Although this would increase the former Gould School District's relative voting strength on the interim board, further straining against the proportionality requirement, this again seems an inevitable consequence in that it is impossible to have a fractional vote on an interim board.Compare A.C.A. § 6-13-1406(a)(1)(B)(ii)(a), as amended by Act 25 of 2003
(2nd Ex. Sess.) (providing that if an interim board is formed to serve until the school election in the year following an annexation, at least one member of the former board of each affected district shall serve on the interim board).
In my opinion, the procedure for effecting the removal of the additional director is set forth at A.C.A. § 6-13-606 (Repl. 1999), which provides:
 (a) The board of directors of any school district in this state which now has or which is authorized to have more than five (5) directors may file a petition with the State Board of Education requesting a decrease in the number of directors for that district to any number not fewer than five (5).
 (b) Notice of the filing of the petition shall be published within ten (10) days thereafter by one (1) insertion in some newspaper having a general circulation in the district.
 (c) Upon a showing that such decrease will not be detrimental to the district petitioning for it, the state board is authorized to decrease the number of directors for the district to any number not fewer than five (5).
 (d) The order directing such decrease shall be entered not more than sixty (60) days after the publication of notice.
 (e) Pursuant to the order and as soon as possible thereafter, the members of the board of directors shall draw by lot for the number of positions determined.
 (f) The remaining directors shall continue to serve their unexpired terms.
Given the fact that the former Gould School District is entitled to representation on the interim board, I do not believe the former Gould School District member should participate in the drawing by lot referenced in subsection (e) of this statute.
Question 3: Does Arkansas law prohibit the interim board of theconsolidated Dumas-Gould School District from consisting of six (6) boardmembers?
Yes. A.C.A. § 6-13-1406(f).
Question 4: If the proportionate requirement set forth in 6-13-1405(a)(5)(C) (ii) and 6-13-1406(b)(1) precludes the interim board from having morethan one member from the former Gould School District, what is the properprocedure for selecting the seventh (7th) board member?
Only A.C.A. § 6-13-1405(a)(5)(C)(ii), not A.C.A. § 6-13-1406(b)(1), sets forth a proportionality requirement. As reflected in my response to question two, I believe A.C.A. § 6-13-1405(a)(5)(C)(i), which mandates that the interim board consist solely of members of the former districts' boards, precludes the interim board from comprising more than five members. As further noted above, I believe the appropriate course would be to reduce the size of the board by one, using the procedure set forth at A.C.A. § 6-13-606.
Question 5: Since the six (6) member interim board of the consolidatedDumas-Gould School District currently consists of five (5) board membersfrom the former Gould [sic: "Dumas"] School District, is this a legallyconstituted interim board under Arkansas law and, if not, would itsactions nevertheless be deemed legal and binding under the concept of ade facto board or other principles of law?
As discussed above, I do not believe the current board is "a legally constituted interim board under Arkansas law" because it has an even number of members. Having offered this conclusion, I will opine that the board's action would, as you speculate, "nevertheless be deemed legal and binding under the concept of a de facto board."
Even though an officer is ineligible to hold an office, so long as he was elected or appointed under color of law he may serve and validly act as a "de facto" officer while he is permitted to retain the office. The Arkansas Supreme Court has summarized this so-called "fiction of law" as follows:
 A person who enters into an office and undertakes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer de facto with respect to his official acts, in so far as third persons are concerned.
Pennington v. Oliver, 245 Ark. 251, 254, 431 S.W.2d 843 (1968), quotingFaucette, Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279 (1918).
Thus, an officer who is in possession and exercising the duties of an existing office, if he or she has at least a fair color of right or title to the office (through, for example, election or appointment to the position by the legally constituted authority) is a de facto officer. As such the actions of such person are not "void ab initio," but rather are "valid and effectual, while he is permitted to retain the office, as though he were an officer by right." Appleby v. Belden Corp.,22 Ark. App. 243, 247, 738 S.W.2d 807 (1987). See also Ark. Ops. Att'y Gen. Nos. 2003-194 and 93-031.
In the present case, I assume the interim board was selected by the former boards pursuant to their understanding of A.C.A. §6-13-1406(b)(2), which, as previously noted, provides:
 The boards of directors of the affected districts may by agreement establish a board of directors of the resulting district composed of not fewer than five (5) nor more than seven (7) directors except for those school districts allowed to do otherwise pursuant to § 6-13-604.
The fact that the former boards erred in appointing an interim board with an even number of members, thereby violating A.C.A. § 6-13-1406(f), does not mean that the appointments were not made under "color of law" — namely, the provisions of A.C.A. § 6-13-1406(b)(2). Accordingly, I believe a reviewing court would deem legal all actions taken by the interim board within the scope of its authority.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Subchapter 16 of chapter 13 of title 6 of the Code was enacted in its entirety by Act 60, § 3. This new subchapter sets forth the mechanics to effect voluntary administrative annexations or consolidations between or among consenting districts in order to realize the minimum required enrollment per merged district. The subchapter further sets forth the procedure to effect an involuntary administrative consolidation in the event a noncomplying district has not petitioned for a voluntary annexation or consolidation or the Board of Education has rejected its petition.
[2] The definition offered at A.C.A § 6-13-1401(1) is further broadened relative to that set forth at A.C.A § 6-13-1601(3) by the fact that the entire statute defining terms used in subchapter 14 is prefaced by the qualifier "unless the context otherwise requires." Subchapter 16 contains no such qualifier.
[3] I am unable to account for the inclusion of the phrase "or into" in the highlighted passage, given that the concept of consolidation necessarily entails the fusion of two or more existing districts into a new "resulting" district. See A.C.A § 6-13-1601(9) (defining a "resulting district" as "the new school district created from an affected district or districts as a result of administrative consolidation"). I am further unable to account for the second use of the singular term "district" in the definition just quoted, given that it is logically impossible for a single district to consolidate with itself to form a new district.
[4] I should note that the eighth paragraph of the Board's order (which is numbered 7 because, inexplicably, the order contains two paragraphs 6) contains the following declaration:
 That, pursuant to Ark. Code Ann. § 6-13-1603(a)(2)(B) (added by Act 60 of the Second Extraordinary Session of 2003), this administrative consolidation shall be effective on July 1, 2004, and as of that date, the Gould School District shall cease to exist.
You have expressed concern that this paragraph references only the Gould School District and not the former Dumas School District, which has likewise ceased to exist. You are apparently concerned that the failure to mention the former Dumas School District in this passage may mean that it is not "affected" under the applicable statutory definition. Perhaps the Board failed to mention the former Dumas School District in order to avoid any suggestion that the identically named new Dumas School District as well "shall cease to exist." In any event, I believe the new, resulting district is a legally distinct entity from the former districts contained within its boundaries, rendering those former districts "affected" for purposes of the analysis you have asked me to undertake.
[5] My analysis on this score would differ if the merger took the form of a voluntary administrative annexation, since in that instance the annexing district would survive, gaining the territory and property of the affected district. However, the Code is unambiguous in declaring that districts subject to merger either because the Board of Education rejected their petition for voluntary annexation or consolidation or because they failed to file a petition must be involuntarilyconsolidated. A.C.A. § 6-13-1603(a)(3), as enacted in Acts 2003, No. 60, § 3 (2nd Ex. Sess.).
[6] The referenced statute was initially enacted as A.C.A §6-13-1405(a) pursuant to Acts 2003, No. 1467, § 19.
As a practical matter, it would appear in this instance that the local boards did not have 30 days to establish an interim board. Subsection 6-13-1405(a)(5)(A)(ii) provides:
 If the consolidation is under § 6-13-1602, the resulting school districts shall establish an interim board by May 31 immediately preceding the effective date of consolidation.
The Board's order of consolidation is dated May 28, 2004, thus affording the merging boards only a matter of days to designate an interim board for the resulting district. The affected boards apparently acted within this narrow time-frame, inasmuch as the only merged district reportedly failing to meet this deadline was the Barton/Lexa — Lakeview consolidation. Minutes, State Board of Education, Monday, June 14, 2004.
[7] The referenced A.C.A § 6-13-604 provides that the Board of Education may approve an increase in the size of a board up to seven except in the case of school districts having an average daily attendance exceeding 24,000 students, in which case the board may comprise nine members. The size restrictions on board membership set forth in A.C.A §6-13-1406(b)(2) track those set forth in A.C.A § 6-13-634.
[8] I must stress that the question of who should pick the number of directors in the resulting district is logically distinct from the question of who should select whom those directors should be.Act 1467 of 2003, enacting A.C.A § 6-13-1405(4), unequivocally stated that the Board of Education must allow consolidating districts thirty days to establish an interim board, and that the Board of Education might appoint an interim board only if the consolidating districts failed to do so.