The Honorable Paul Miller State Senator Post Office Box 488 Melbourne, Arkansas 72556-0488
Dear Senator Miller:
I am writing in response to your request for my opinion on the following questions:
 1. Should the governing body select new appointees (for the positions held by those of the governing body) to an AP Commission after an election and beginning of new terms of council members and mayor?
 2. Is it improper for the mayor of a second-class city to serve in one of the two positions of the governing body on an AP Commission?
 3. If a term has expired for an AP commissioner, is it improper for the commissioner to continue serving without a reappointment and approval by the city council?
 4. If the "at large" appointee on an AP commission has been elected as an alderman and two of the governing body are already appointed as AP commissioners, should a new individual be appointed for the "at large" position and who is the proper body to make that appointment?
 5. Who is the proper body to make appointment to fill unexpired terms of AP commissioners? *Page 2 
 6. Is it unlawful to have expenditures by an AP commission not documented by minutes authorizing the expenditures?
 7. Would a manager or owner of a computer service business be eligible to fill the position of one of the commissioners on an AP commission?
 8. Can the portion allocated for capital improvements in AP funds be used for advertising expenditures?
 9. Can an individual that has been appointed to an AP commission be removed by the governing body of the city? [The individual in question is not an owner or manager of a motel/hotel, restaurant, or a gift shop, not an alderman, and does not have a business license.]
 10. If a commissioner no longer owns or manages a tourist related business, should that commissioner be asked to resign?
RESPONSE Question 1: Should the governing body select new appointees(for the positions held by those of the governing body) to an APCommission after an election and beginning of new terms of councilmembers and mayor?
In my opinion, following an election, the governing body has the authority to select new appointees to an AP commission for the two positions reserved for members of the governing body.[1] However, nothing in the Code obligates a city council to select new appointees following an election.
The Advertising and Promotion Commission Act (the "Act")[2] contains the following provision: *Page 3 
 Two (2) members of the commission shall be members of the governing body of the municipality and selected by the governing body and shall serve at the will of the governing body[.][3]
In accordance with the provision that these members "serve at the will of the governing body," the Act sets no term limits for these two members. A governing body may therefore replace one or both of these members at any time, irrespective of whether an election has taken place. There is no requirement that these members should be replaced following an election.
Question 2: Is it improper for the mayor of a second-class city toserve in one of the two positions of the governing body on an APCommission?
No, such service is not improper.
Subsection 14-44-107(a) of the Arkansas Code (Repl. 1998) provides as follows:
 The mayor in cities of the second class shall be ex officio president of the city council, shall preside at its meetings, and shall have a vote to establish a quorum of the council, or when the mayor's vote is needed to pass any ordinance, bylaw, resolution, order, or motion.
In my opinion, this statute renders the mayor a "member of the governing body" for purposes of applying the above recited A.C.A. § 26-75-605(a)(2). See also Gibson v. City ofTrumann, 311 Ark. 561, 562, 845 S.W.2d 515 (1993) (holding that the mayor is "an ex officio member of the council"); Op. Att'y Gen. No. 95-227 (opining that a mayor is a member of the city's governing body for purposes of applying the Freedom of Information Act). It follows that a mayor is qualified to serve on an AP commission as a member of the city's governing body.
Question 3: If a term has expired for an AP commissioner, is itimproper for the commissioner to continue serving without areappointment and approval by the city council?
The two commissioners referenced in my response to your previous question are not appointed to a fixed term and may consequently continue to serve until the governing body elects to replace them. One other member is selected from the *Page 4 
public at large to serve a four-year term.[4] Four other commissioners are appointed to staggered terms.[5] In my opinion, at the expiration of the latter five members' terms, they will need to be reappointed or replaced by the city council. In the absence of such a reappointment or replacement, the sitting commissioner would nevertheless be authorized to act as a de facto officer. Cf. Landthrip v. City ofBeebe, 268 Ark. 45, 593 S.W.2d 458 (1980) (upholding the actions of a police court judge even though no city ordinance to create the court was adopted or published). See also Op. Att'y Gen. 2000-008 (addressing a situation in which a vacancy on a city council was filled by less than a quorum of the governing body.) I will note in this regard that the acts of de facto officers are valid and enforceable. See, e.g.Bell v. State, 334 Ark. 285, 973 S.W.2d 806 (1998); Appleby v.Belden Corp., 22 Ark. App. 243, 738 S.W.2d 807 (1987); Brown v.Anderson, 210 Ark. 970, 198 S.W.2d 188 (1946).
Question 4: If the "at large" appointee on an AP commission hasbeen elected as an alderman and two of the governing body are alreadyappointed as AP commissioners, should a new individual be appointed forthe "at large" position and who is the proper body to makethat appointment?
Your question appears based on a mistaken assumption that an at-large AP commission appointee who is subsequently elected to the position of alderman might be precluded from serving in both positions following his election. This assumption in turn appears based on two premises: first, that the dual service as commissioner and alderman is impermissible; and, secondly, that only two aldermen are permitted to serve on an AP commission at any given time.
With respect to the first of these premises, dual office-holding is deemed to raise an impermissible conflict-of-interests under three circumstances: (1) if the constitution forbids it; (2) if a statute forbids it; and (3) if the offices involve incompatible duties.Byrd v. State, 240 Ark. 743, 402 S.W.2d 121 (1966); Ops. Att'y Gen. Nos. 2007-217 and 95-178. *Page 5 
As regards the first of these considerations, I have found no constitutional proscription against holding the two offices under the circumstances recited. As regards the second, A.C.A. § 14-42-107(a)(2) (Supp. 2009) provides as follows:
 No alderman or council member shall be appointed to any municipal office, except in cases provided for in §§ 14-37-101 et seq. — 14-61-101 et seq., [6] during the time for which he or she may have been elected.
This office has opined on at least two occasions that this statute does not preclude a sitting AP commission member from being elected an alderman, although, logic notwithstanding, the obverse proposition — that a sitting alderman can be appointed to an AP commission — is unacceptable. See Ops. Att'y Gen Nos. 2007-217, at 5, and 97-057, at 3-4. Finally, given the above noted independence of an AP commission in allocating its resources, I see no common-law incompatibility in a commission member being elected to a city council.
With respect to your second suggestion that only two aldermen may serve on an AP commission at any given time, the Code provides as follows:
 One (1) member shall be from the public at large who shall reside within the levying municipality or in the county of the levying municipality and shall serve for a term of four (4) years.[7]
Subsection (b)(2) of the statute further provides:
 The at-large position provided for in subdivision (a)(3) of this section shall be filled by nomination by the chief administrator of the city and approval by the governing body of the city.[8]
Although subsection (a)(2) of the statute mandates that two members of the commission be members of the governing body serving at the will of the city *Page 6 
council, [9] nothing in the statute precludes a sitting city-council member from also filling the at-large position — or, for that matter, if he is qualified to do so, filling one of the four positions reserved for individuals who are "owners or managers of businesses in the tourism industry."[10] Indeed, subsection (c)(2) of the statute, which provides as follows, expressly contemplates the possibility that aldermen could fill more than two positions on an AP commission:
 However, if . . . no commission member has been appointed to hold an at-large position, the mayor shall designate one (1) of the commission members who is also a member of the governing body of the city to fill the at-large position provided for in subdivision (a)(3) of this section for term of not longer than one (1) year.
In short, I find nothing in these statutes that would preclude an at-large member of an AP commission from retaining that position upon his election to the office of alderman.
Question 5: Who is the proper body to make appointment to fillunexpired terms of AP commissioners?
With respect to the at-large and the four tourism-industry positions, subsection (d) of the statute provides as follows:
 Whether resulting from expiration of a regular term or otherwise, a vacancy on the commission in any of the four (4) tourism industry positions provided for in subdivision (a)(1) of this section or in the at-large position provided for in subdivision (a)(3) of this section shall be filled by appointment made by the remaining members of the commission, with the approval of the governing body of the city.
(Emphasis added.) I have emphasized the term "or otherwise" because in my estimation it covers the contingency of "unexpired terms" referenced in your question. In my opinion, this statute sets forth the mechanism for filling a commissioner's unexpired term when a vacancy occurs. *Page 7 
As noted above, pursuant to subsection (a)(2) of the statute, the remaining two members of a commission must be members of the city's governing body, which appoints them at will to serve an indeterminate term. It thus verges on being a contradiction in terms to speak of "unexpired terms" for these at-will positions. The governing body will at any time be authorized to fill these positions.
Question 6: Is it unlawful to have expenditures by an APcommission not documented by minutes authorizing the expenditures?
Although the Act contains no provision requiring an AP commission to document its expenditures by minutes, it would seem a foregone conclusion that an AP commission would maintain some record of how it has expended its revenues.[11] The need for such documentation is confirmed by the fact that the Legislative Auditor is charged with reviewing such records or, in the case of a city of the second class, affirming procedures to document expenditures.[12] There is no express statutory provision, however, mandating that an AP commission document its expenditures in the form of minutes.
Question 7: Would a manager or owner of a computer servicebusiness be eligible to fill the position of one of the commissioners onan AP commission?
Although the question is ultimately one of fact, I question whether a manager or owner of a computer service business would fall within the category of "owners or managers of businesses in the tourism industry" — a group that comprises four of the seven AP commission members.[13] If the individual at issue were serving on the city's governing body, he would be eligible to serve in one of the two positions reserved for such officials.[14] Also, he might qualify for the at-large position established in A.C.A. § 26-75-605(a)(3). *Page 8 Question 8: Can the portion allocated for capital improvements inAP funds be used for advertising expenditures?
In my opinion, the answer to this question is "yes," so long as the AP commission has approved the use and the referenced advertising serves the purpose of "promoting the city and its environs."[15] The Code expressly provides that "[t]he commission is the body that determines the use of the city advertising and promotion fund."[16] Both qualified capital improvements and advertising expenditures fall within the discretion of the commission, which may allocate its resources to one or both of these purposes as it chooses.
Question 9: Can an individual that has been appointed to anAP commission be removed by the governing body of the city? [Theindividual in question is not an owner or manager of a motel/hotel,restaurant, or a gift shop, not an alderman, and does not have abusiness license].
Your question implies that you do not consider the appointee qualified to hold his position under the criteria set forth in the statute. As noted above, the qualifications set forth in your bracketed aside apply to six of the seven positions on the commission, leaving one at-large position open to any member of the public who resides in the municipality levying the hamburger tax or in the county of the levying municipality.[17] Not being a finder of fact, I cannot opine whether the individual who has prompted your question is qualified to occupy his office.
As to the question of how an appointee might be removed from office, I am attaching for your information a copy of Op. Att'y Gen. No. 2007-217, which addresses this issue in detail. See also
Op. Att'y Gen. No. 95-296.
Question 10: If a commissioner no longer owns or manages a touristrelated business, should that commissioner be asked to resign? *Page 9 
Assuming the commissioner were neither a member of the municipality's governing body nor an at-large member, he would appear to be unqualified to serve under the hypothetical facts you have recited. If this were the case, it would be appropriate to ask him or her to resign. Should this request be denied, the remedies referenced in my response to your previous question would be available.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh Enclosure
[1] A.C.A. § 26-75-605(a)(2) (Repl. 2008).
[2] A.C.A. §§ 26-75-601 through -618 (Repl. 2008 Supp. 2009).
[3] A.C.A. § 26-75-605(a)(2) (Repl. 2008).
[4] A.C.A. § 26-75-605(a)(3).
[5] A.C.A. § 26-75-605(b)(1).
[6] The referenced Code sections are not pertinent to your inquiry.
[7] A.C.A. § 26-75-605(a)(3).
[8] A.C.A. § 26-75-605(b)(2).
[9] A.C.A. § 26-75-605(a)(2).
[10] A.C.A. § 26-75-605(a)(1)(A).
[11] Section 26-75-604 of the Code (Repl. 2008) provides that revenues realized from collection of what is commonly known as the "hamburger tax" will be credited to the levying city's AP commission. The permissible uses of these funds are itemized in A.C.A. § 26-75-606 (Repl. 2008).
[12] See A.C.A. § 10-4-202 (Repl. 2002).
[13] A.C.A. § 26-75-605(a)(1)(A). Subsection (a)(1)(B) of this statute requires that three of these four members "shall be owners or managers of hotels, motels, or restaurants."
[14] A.C.A. § 26-75-605(a)(2).
[15] A.C.A. § 26-75-606(a)(1)(A)(i) (Repl. 2008).
[16] A.C.A. § 26-75-606(a)(2)(A).
[17] A.C.A. § 36-75-605(a)(3). *Page 1